Tilgiiman C. J.
This is a proceeding by a landlord against his tenant to obtain possession under the act of 21st March, 1772. The proceedings were removed to the Court of Common Pleas of Allegheny county by certiorari: where they were confirmed, and they are now in this Court by a writ of error. It appears by the inquisition, that Margaret Duncan demised a messuage and tract of land to James Blashford, to hold at her -will without payment of any rent; and it is objected, that the case is not within the act of assembly, which is confined to cases where a certain rent is re *484 served. It is enacted by the 12th section of the act, that “ any person having leased or demised any lands or tene- “ ments to any person or persons, for a term of one or more years, or at will, paying certain rents,” may, in certain cases specified in the act, apply to any two justices, “ and upon due proof before the said justices, that the lessor had been “ quietly and peaceably possessed of the lands or tenements “ so demanded to be delivered up, that he had demised the “ same, under certain rents, to the then tenants in possession, “.and that the term for which the. same was demised is fully “ended,” the said justices may issue their warrant to the sheriff, commanding him to summon twelve substantial freeholders to appear before the said justices in four days, &c. &c. The act then goes on to provide, that the landlord may be restored to his possession, and recover such damages as shall be assessed by the said freeholders, in case it shall appear to the said justices and freeholders, “ that the lessor had “been possessed of the lands or tenements in question, that “ he had demised the same for a term of years, or at will, to “the person in possession, or some other under whom he “ claims, or came into possession at a certain yearly or other “ rent; that the term is fully ended, and that demand had “ been made of the lessee or other person in possession as aforesaid to leave the premises three months, before the ap- “ plication to the justices.” Thus it appears, that upon every occasion where the act mentions the kind of demise upon which relief is to be given, (and it is mentioned in. three instances,) it is described as a demise upon which a certain rent is reserved. If it be asked, what material difference there is between a demise on which rent is reserved, and one on which no rent is reserved ; it may first be observed, that where the law has made a difference it is not for the Court to say there is none : nor is it for us to extend this summary proceeding whiph deprives a man of his possession in a few days to cases not clearly within the scope of the law. Then as to the difference between cases where a rent i.s reserved and those where none is reserved, it may be answered, that there certainly is a difference. The very idea of a lease seems to contain some kind of render or service from the tenant, and where nothing of the kind is stipulated the connection of the parties, as landlord and tenant, does not appear to be completely recognised. But where the tenant agrees to. *485 pay rent, it is a full acknowledment not only of his landlord’s title, but of the lessee’s holding under him as tenant. Whether this was the view which the legislature took of the subject, or whether they thought it not worth while to give an extraordinary remedy in cases where the landlord had not thought it worth while to reserve any rent, I will .not undertake to say. But whatever might have been the motive, they have confined the remedy to cases where rent is reserved: and even if they made an involuntary omission, the Court has no right, in a case of this kind, to supply it.
But it has .been contended by the counsel for the landlord, that in one part of the record it appears, that rent -was reserved. Looking through the whole of this record it certainly exhibits a singular aspect. In the inquisition, under the hands and seals of the freeholders and justices which is returned as part of the record, it is expressly found, that the demise is without rent. And yet afterwards in something which seems to have been intended for a record drawn up by the justices, and certified by them alone, it is averred, that it was found by the justices and freeholders that for the last three years a rent of one dollar a year tvas reserved. Certain it is, that the inquisition and the record, certified by the justices, are at variance. What is to be done then ? Supposing that the justices might, as has been contended, have made .a record of the proceedings without annexing the inquisition to it, yet they have not done so. They have sent the inquisition, and having placed it on the record they cannot contradict it. But even supposing, that no regard was to be paid to the inquisition, we must then take the proceedings as they are certified by the justices in the record which they have drawn up : and in that record there is an essential defect ; for it does not appear, that the term was ended. So that in no point of view can the proceedings be supported.
I am, therefore, of opinion, that the judgment of the Court of Common Pleas confirming the proceedings before the justices and freeholders, should be reversed, and that these proceedings should be quashed.
Yeates Jv, was sick and absent.
Gibson J.
The whole scope of the landlord and tenant act seems to evince, that the legislature contemplated a re-pos *486 session of the demised premises immediately at the end of the term. The inconvenience to the tenant from being dispossessed in the middle of a succeeding year, when the assent of the landlord to a continuance of the lease may have been presumed from his silence, would be oppressive, especially as by the custom of the country lands are let only at a particular season. The reasons of Judge Wilson in Brown v. Vanhorne, appear to my mind satisfactory. In giving a construction to a statute general convenience ought never to be lost sight of. But as the inquest, who were the legal judges of the facts,have expressly found, that the plaintiff was a tenant at will, and not from year to year, notice might be well given, to him at any time. I lay out of view all the facts introduced into the record by the justices which are not warranted by the inquisition of the freeholders. These, if taken as a part .of the case, would constitute a tenancy from year to year, but without being expressly found by the freeholders they can have no legal effect.
The next exception, that it is expressly found no rent "was reserved, is better founded. In giving this summary proceeding "the object of the legislature was to relieve the landlord from the vexation and delay of an ejectment, to which, only, he could, before the act was passed, have had recourse, even in the plainest case, and where the tenant could not hope to make a successful defence. The intention, however, was to confine the application of the remedy to plain cases only; and accordingly we find the legislature have described, with prefcision, the few and simple ingredients that compose the cáse they have committed to the jurisdiction of the justices and freeholders. The reservation of rent being the most satisfactory evidence of tenure, of which any case is susceptible where the agreement is by parol, was, no doubt introduced to prevent the remedy from being extended to cases where the existence of a lease may be barely pretended, for, the purpose of giving colour of jurisdiction. The frequency of attempts to abuse the provisions of this act, by perverting it to purposes of oppression, and to bring it to bear on cases never intended to fall within its operation, shews the propriety of leaving nothing to construction, as to what is necessary to constitute a case falling within it. I am, therefore, disposed, in every instance, to hold this tribunal strictly to the letter of its authority. *487 Then, whatever may have been the motive, it is certain the legislature have made the reservation of renta fact necessary to authorise the justices to take cognisance of the complaint, and they being a court of special jurisdiction, in derogation of the common lav/, must be restrained in the exercise of their authority to cases that clearly and explicitly come under it, without the aid of any construction or intendment whatever. But it is contended that, as the justices have set forth in their record that a certain rent was reserved, the fact sufficiently appears; and that, as it was not necessary to send up the inquisition, the case stands exclusively on the record. I admit, if the justices had sent up only the record, which they are, by the act, directed to make, it would have been good in the first instance, at least, to enable the Court to proceed on the return, and, if diminution were not suggested, the Court would not travel out of it, to discover whether it were falsely made up. But, where there is a suggestion of diminution, the Court, for the purpose of looking at the whole proceedings, will award a certiorari to bring them up. Here, having been sent up, in the first instance, they are judicially before us; and We can, therefore, inquire whether the justices have introduced into their record facts for which they had no warrant. It being the province of the freeholders to ascertain all necessary facts, and, it being “ lawful, in every such case, for “ the said two justices to make a record of such finding,” it is error if the facts are recorded untruly: at least no defect can be supplied by the introduction of any thing not found in the inquisition. The judgment would be then rendered on facts different from those found by the persons who are the legal judges in that particular. -Here the defect is in the inquisition, and it is clear it cannot be cured by any act of the justices, who, without the concurrence of the freeholders have no right to assume any fact necessary to sustain the landlord’s case. The judgment must be reversed.
Judgment of the Common Pleas reversed and proceedings quashed.