Tilghman C. J. —
This was a proceeding by David Herron, against his tenant James Logan, under the Landlord and Tenant Act, to recover possession of. certain lands which had been leased by Herron to Logan. It appears by the inquisition, that on the 1st day of April in the year 1816, Herron made a lease to Logan for the term of one year, by virtue of which Logan held the land until the time of the taking of the inquisition, (the 19th of July in the year 1817,) although he received notice from Herron, on the 14th April in the same year, to quit the premises. The single point in the cause is, whether the notice to quit, should not have been given, three months before the expiration of the lease P The counsel for the tenant contends^ that it was the duty of the landlord to give him notice, three months before the end of the year, and that for want of such notice, he had a right to retain the possession another year; or even if he had not a right to retain the possession, and the landlord would be entitled to recover it in an ejectment, still, he could not recover it by this summary proceeding, under our Act of Assembly. I will consider first, whether the landlord could have recovered in an ejectment. When the termination of the lease is uncertain, and depends on the will of the landlord, it is *461 necessary that notice should be given during the lease, because otherwise, the tenant cannot know at what time it is to end. As, where a lease is made for a year, and so from year to year as long as it pleases the landlord, or as long as it pleases both parties, if the landlord wishes to determine the lease, he must give notice three months before the expiration of the year — because, the lease being from year to year, it would be contrary to the agreement to turn the tenant out in the middle of a year. In such case, unless notice to quit be given three months before the end of the year, it may be fairly implied, that the landlord consents to continue the lease for another year. But where the lease is to determine at a certain time, there can be no occasion for notice, because the time of termination is as well known to the tenant as the landlord, and if the tenant wishes to renew the lease, it is his business to apply to the landlord for a renewal. But if no such application be made, the landlord has a right to take for granted, that the lease is to expire at the appointed time. It is to be understood, however, that the landlord may, by his conduct, give the tenant reason to think, that a new lease for a year is intended, and in such case the tenant will be entitled to retain the possession, without any formal contract. What acts will amount to a consent on the part of the landlord, will be matter for the consideration of the jury, under the direction of the Court. In the case of Jackson, Lessee of Van Cortlandt v. Parkhurst and others, 5 Johns. 128, it was decided by the Supreme Court of New Tork, that, on a lease for three years ? where the landlord did no act from which his consent to a renewal could be inferred, he was entitled to recover the possession in an ejectment, at the end of the term, though he had given the tenant, no notice to quit. And in the case of Bedford v. M'Elherron, 2 Serg. & Rawle, 49, it was laid down by this Court, that where the. lease is to expire at a certain time, there can be no occasion for the landlord to give notice, because the tenant has agreed to give up the possession at the appointed time. In the case before us there was no act whatever of the landlord, from which his consent to a renewal of the lease could be implied, and therefore I conclude that he might have recovered in an ejectment. Let us next consider how the case stands upon the Act of Assembly (21st March, 1772, sect. 11, 1 Sm. L. 370.) The main *462 intent of the Act seems to have been, to restore speedy pos» session to landlords who were entitled to it, without putting them to. the expense and delay of an ejectment. For this purpose a summary proceeding is given, which is not to be instituted till after three months from the time when the landlord has required the tenant to remove from the premises. But the Act does not ^ay, that the demand of possession must be given three months before the end of the lease. . The words are, “ that if it shall appear to the said justices and freeholders, that the lessor had been possessed of the lands in question, that he had demised the same for a term of years, or at will, to the person in possession, or some other under whom he claims, or came into possession, at a certain yearly or other rent, and that the term is fully ended ; that demand had been made of the lessee or other person in possession as aforesaid, to leave the premises, three months before the application to the said justices, then, and in every such case, it shall be lawful for the said two justices to make a record of such finding,” &c. &c. Now the inquest before us, finds all the matters prescribed by the Act of Assembly, viz. that David Herron was possessed of the land in question on the 1st April, 1816, on which day and year, he made a lease to James Logan for one year, at a certain yearly rent, (mentioning the amount) ; that the said term was fully ended, and that on the 14th Aprils 1817, (which was three months before Herron’s application to the justices) notice had been given to Logan, to leaye the premises. But it is contended on the part of the tenant, that although the Act does not expressly say, that notice must be given three months before the end of the term, yet it must have so intended, because otherwise the tenant may be taken by surprise, and turned out in the middle of a year, while his crops are growing. But it is begging the question to say, that the tenant may be taken by surprise. There can be. no surprise, where a man holds, over, knowing that his lease is ended. If he wished to renew the lease, he might have ascertained, by application io his landlord, whether a renewal could be obtained. But the landlord may be surprised, if trusting to his contract, and having given no consent, express or implied, by words or actions, to a renewal of the lease, his land may be detained from him. I do not know that the point in question has ever *463 been directly decided by this Court. But as I think there can be no doubt that Herron might have recovered in an ejectment, and the inquest has found every thing which by th*- express words of the Act of Assembly is required, in order so entitle him to the possession under the present proceedings, 1 see no reason why he should not obtain it. The only doubt as to the construction of the Act of Assembly, arises on the words which direct the application to be made by the landlord, to the two justices of the peace under whose superintendence the inquest is to be held. The expressions are, “ that where any person, having demised any lands or tenements for a term of one or more years, or at will, paying certain rents, shall be desirous, upon the determination of the lease, to have again and re-possess his estate so demised, and for that purpose shall demand and require his lessee to remove from and leave the same, See.” It is supposed by some, that this means a desire during the continuance of the lease, to have the possession immediately on its termination, and therefore the demand of possession must be made three months before the end of the lease. And'l have no doubt that the landlord may give notice three months before the end of the lease, that he requires possession immediately on its termination. But he is not obliged to do so. He may, very naturally take for granted that the possession will be given to him at the end of the lease, and if he finds himself disappointed in that expectation, he may demand immediate possession, and although he cannot make his application to two justices for redress, until three months after his demand of possession, yet he, will be entitled to damages for the unjust detention, viz, for the detention the whole- time after the demand of possession. The Act does not require a demand to give up the possession at the end of three months. Where the demand of possession is not made till the lease has expired, there may be a demand of immediate possession, and every moment the possession is withheld by the tenant, after such demand, a wrong is done for which he is answerable in damages. It is this idea, that the Act requires notice to quit at the end of three months, which has caused a perplexity in its construction. But upon examining it closely, it will be found that it requires no such thiug. All that is necessary is, that the demand shall have been made three months before *464 the application to the justices. That this is really the intent of the Act, is sufficiently clear, from a comparison of all its parts — for when it comes to describe with minuteness and precision, what it is necessary for the inquest to find, in order to entitle the landlord to a recovery of the possession, it only says, that it shall appear that the lease is fully ended, and that demand had been made of the lessee, to leave the premises•, three months before such application to the justices. It is, besides, an important consideration, that the preamble to the 11th section of the Act, recites the hardship to which landlords had been exposed, by being obliged at great expense, to bring ejectments against their tenants, and that by the delay incident to law proceedings, they had been kept out of possession several years. This being the mischief, it may be presumed that the remedy was intended to be co-extensive ; and therefore the Act ought to afford a remedy in all cases in which the landlord might have supported an ejectment. The English Statute of 4. Geo. II. c. 28. sect. 1, by which the landlord Is enabled to recover double rent from his tenant, who holds over after notice to quit, is drawn in terms somewhat similar to those of our Act of Assembly. In the construction of that Statute, the English Courts have differed. I am not permitted to cite their decisions subsequent to the 4th July, 1776. But it is proper to say, that if there were any' cases prior to the 4th July, 1776, by which it would appear, that notice to quit ought to be given by the landlord, before the expiration of the lease, those cases have been overruled, and the law is now held otherwise. Upon the whole then, it appears to me, that it will tend to the advancement of justice and good faith, if landlords are restored to the possession of their property as soon as possible after they are entitled to it; that it was the intent of our Act of Assembly to give speedy possession to those landlords who might have recovered in an ejectment; and that this construction can throw no hardship or inconvenience on any but negligent tenants. I am therefore of opinion, that the notice in this case was sufficient, and the judgment should be affirmed.
Gibson J. —
The first clause of the section on which the question arises, speaks of the landlord being “ desirous upon *465 the determination of the lease” to have again and re-possess the premises, and of the tenant’s refusing to surrender the possession within three months after notice to quit: and from this, taken by itself, there might be a doubt whether the Legislature did not intend that there should be no interval between resumption of possession by the landlord and the end of the term; and that would undoubtedly require three months notice previous to the expiration of the lease. But when the Legislature come to describe the particular kind of case which the landlord must prove to entitle him to recover, they declare it to be sufficient, if demand has been made of the lessee or other person in possession, three months before the application to the justices, not three months before the expiration of the term. The precision of this last clause, explains all that may be thought ambiguous in the preceding clauses ; and, judging from the letter, shews the exact meaning of the Legislature. As then the letter is satisfied by notice at any time, if three months before the complaint to the justices, the tenant’s possession, under circumstances like the present, can be protected, if at all, only by supposing, either that this particular intention of the Legislature is inconsistent with a general intention (if such can be collected from the scope of the Act,) that an omission to give three months notice before the end of the term, should operate as a renewal of the lease: or that by the common law, suffering the tenant to remain in possession after the expiration of the term, as in this case, for fourteen days, amounts of itself to a new agreement for a lease from year to year. In either result, there being a subsisting lease, the landlord could not recover. I will therefore inquire whether the first can be drawn from a fair construction of the Act; or the second from the common law.
I can discover nothing in the object or scope of the Act, to give colour to an opinion, that want of notice was to operate as a renewal of the lease. In the preamble of the Act, the mischief to be remedied is declared to be the expense and delay incident to the action of ejectment, at that time the only remedy to which the landlord could have recourse. But notice to quit was not then, nor has it been since, a requisite preliminary to an ejectment. Then what was the alteration intended ? It was, as it seems to me, nothing more *466 than to provide a cheaper and more expeditious remedy than the one then in use. The law was made for the landlord, not the tenant. No'changc in the tenant’s interest, either as to quantity or quality, was contemplated: what was strictly a tenancy for years was to remain so. But if the construction contended for were to prevail,-the Act would have the effect of turning every lease for years, into a lease from year to year; or rather, the tenant would have, not only a lease for so many years certain, but also a lease from year to year engrafted on it; the first year of the series, being the last year of the term as settled by the agreement of the parties. This would confound all our notions derived from the books. I.et it be said, that although the main object of the Act was to benefit the landlord, the provision requiring notice to be given, was for the benefit of the tenant. I grant it. But it was not to give him a new advantage; but, sub modo, to preserve one he possessed before. While the remedy was by ejectment, he had ample time to provide a retreat before he could be dispossessed ; but when the summary proceeding was introduced, it was thought cruel to suffer a family to be turned out at a moment’s warning, houseless, and perhaps in an inclement, season of the year. The interval of three months to seek a shelter, therefore, was boon granted by humanity, not to the merits, but the necessities of the tenant, or rather his family ; and the notice was intended to be the means of securing him in the enjoyment of it, not of putting an end to the tenancy. Nor. was there a design that an omission to give notice at any period before the end of the term, should enlarge the tenant’s interest or privileges. He could not complain of surprise, when he all along knew from the terms of his lease, that his interest was to cease at the day specified. If he wished to hold for another year, it would be his business to sound the landlord on the subject of a new agreement; and both parties being on a footing in this respect, as well-might the landlord insist on three month’s notice of an intention to quit by the tenant, which it has never been pretended he could exact, where the lease was for a definite period. In fact, the rule must be reciprocal j and if the landlord is bound for the succeeding year, so must the tenant be, where neither has given notice. To permit either to play fast and loose, while the other is bound at *467 all events, would be an unreasonable advantage, and plainly unjust. I see no good reason, therefore, to give the Act an operation beyond-the immediate mischief to be remedied.
I know of no analogous English Statute, except the 4 G. H. c. 28, which gives the landlord double the yearly value of the premises, where the tenant “ shall wilfully hold over, after the determination of such term, and, after demand made, and notice in writing given, for delivering the, possession thereof.” In construing this, it was held in Cutting v. Derby, 2 W. Bl. Rep. 1075, that the notice might be given previous to the expiration of the term; and two of the Judges, (Gould and Blackstone) inclined to think it ought to be given previously to enable the. tenant to prepare to depart. There is nothing in t-his reason ; for as the Statute points out no particular time, the notice might be given the instant preceding the termination of the lease, and be, therefore, unavailing as to its supposed object. But the notice was not to inform the tenant of his duty as to surrendering the possession, (for the lease is notice of that,) but that the landlord intended to insist on the penalty of. double value, either from the end of the lease, where notice was given before, or from the time of its having been received, where given afterwards. Under the Statute, a tenant holding over is a wrong doer; with a locus penitentice until notice be given that the punishment is about to be inflicted, and without which, it cannot be inflicted. Accordingly we find ' the opinion of the two Judges in Cutting v. Derby dissented from in a case since the Revolution.* But at all events, the words of that Statute are not as strong as those of our Act, which expressly requires nothing more than a notice three months before the application to justices. The 11 G. H. c. 19, relates to notice of an intention to quit given by the tenant, where he has the power to determine the lease : it is therefore not even remotely analogous ; nor have any of the decisions oh it, any bearing on the point before us.
Having disposed of the Act of Assembly, it remains to inquire how the matter stands at the common law; and here nothing is more clear, than the lease itself, where it is for a definite period, as in the case before us, is notice of the *468 expiration of the term, and that the lessor may enter on the lessee the instant it expires, without further notice. (Co. Lit. 270, b) Both parties are apprised that unless they come to a new agreement, the tenancy is at an end; and the term therefore expires by mere effluxion of time, without any notice, or act of either party, to put an end to it. Bedford v. M'Elherron, (2 Serg. & Rawle, 49.) In this respect, a lease fpr years differs from a lease from year to year, which cannot expire by its own limitation, (for it has none,) and in which the current year is melted down into the mass pf those that have already elapsed, and, with them, forms but one term. As, therefore, three months previous notice is not required to put an end to the term, I take it to be conceded, that if the doctrine contended for, is not supported by a fair construction of the Act, the landlord may, for any thing the common law can furnish to the contrary, claim the possession, and give notice on the day the term, expires. The inquiry then will be, as to the effect, not of want of previous notice, but of suffering the tenant to remain in the possession without a request to surrender it, for any given period after the expiration of the term; as, in the case before us, fourteen days, which will present an entirely different question from the one which arises on the construction of the Act. How far the omission to demand immediate possession will operate as a renewal, is well settled. A tenant.holding over, is a tenant at sufferance; (Co. Lit. 57. b. Jackson ex dem. Anderson v. M'Leod, (12 Johns. 182,) a mere tortfeasor; Pike v. Hassen, (3 Leon. 233.) Boggs v. Black, (1 Binney, 335,) incapable of a release, as standing in no privity to his landlord. Finch’s Case, (2 Leon, 145. Co. Litt. 270, b) The cases to this effect are innumerable. But I agree that if the tenant remains in possession with the assent of the landlord, it may be evidence of a tacit renewal of the lease j or to speak more properly, if the landlord,¿foes any act from which a jury may infer that he intends to acknowledge him as his tenant, a new contract, different from the old one, arises, by which the tenure is changed as respects duration; so that the tenant holds for an indefinite, instead of a definite time. All the authorities cited in Woodfall, Adams on Ejectment, and Powel on Contracts, and all the New Fork cases go thus far, and no farther. They all relate to a holding which was originally *469 indefinite; or else, to the creation of a new contract between the owner of the land and a person in possession, whose entry was originally lawful under a lease that had expired, or " that by the' Statute of Frauds or any other cause was originally void ; and to cases where the acquiescence of the owner is taken for granted, the only question being as to its legal effect. What I cannot agree to is, that the mere silence or laches of the landlord in not demanding the possession at the expiration of the lease, or at any time after-wards, can authorise the Court to draw a conclusion of acquiescence, as a matter of legal inference. It is argued, that if the tenant remains in possession a single day after the end of the term, he becomes liable for a whole year’s rent. The truth is, the law is not so j for independent of the Stat. 4. Geo. II, which I have already noticed, and which is not in force here, a tenant at sufferance is not liable to pay any rent, as it is the folly of the owner to suffer him to remain in possession after the determination of his estate. (1 Cruise. Dig. 284:) But if it were otherwise, I cannot see how it would authorise us to infer a correspondent responsibility on the part of the owner; for the holding over being the tenant’s voluntary act, and a tort, it would not be unreasonable to subject him to the alternative of being treated as a tenant or a trespasser, at the election of the owner. The very definition of a tenancy at sufferance, is a holding after the expiration of the term by the laches of the landlord j and it is for this reason, that, in England, no one can be tenant, at sufferance to the king, as laches cannot be imputed to him. If laches alone were sufficient to change the nature of this tenure, it never could exist át all, for that is an indispensable ingredient in its composition. But although the assent >of the landlord may be implied, it can be so, only from positive acts; Boggs v. Black, 1 Binn. 335. Jackson ex dem. Anderson v. M'Leod, (12 Johns. 182:) and even then, it is the business of the jury, not the Court, to make the implication Fishar v. Prosser, (Cowp. 220.) Even the receipt of rent, as strong a circumstance as can occur, has been held only evidence for the consideration of the jury. Cheny v. Batten, (Cowp. 245.) .It has, indeed, since Been held, that a distress ' for rent upon a tenant from year to year, after notice to quit, was, in point of law, a waiver of the notice ; as the taking of a distress is an act not to be qualified, and an express con *470 firmation of the tenancy. But I have little doubt, that a finding of the particular fact of the distress, would not, in a special verdict, be a sufficient finding of the waiver itself, which would have to be expressly found. Here, however, the inquest have, on the other hand, expressly found that the tenancy was at an end; which excludes every implication of a renewal of the lease, or the creation of a new contract of tenure.
Usage is relied on ; and I confess that if there were a practical exposition of the Act, different from what I think it susceptible of, I would, not, at this time, be inclined to disturb it. But the usage spoken of, has obtained only in the middle counties of the State, Where it may have been sanctioned-in a few cases by the County Court. To the east, as well as to the west, it is notorious, a contrary usage has prevailed ; — and usage, to have the effect of changing a principle of the common law, and confounding its most settled distinctions, by creating a species of estate unknown to it before, ought to be general and uniform. Stoever v. Whitman, 6 Binn. 416.
It will be perceived that these remarks are applicable only to leases for a definite term. Leases from year to year, which, by the common law, can be terminated only by a six months notice, depend on different considerations; for neither this, proceeding, nor an ejectment, can be maintained if it be commenced before the relation of landlord and tenant is dissolved. . By this I do not mean to say, the common law notice to quit is essential, and the demand required by the Act must be superadded. A three months notice before the tenancy is determinable, will be sufficient.- The summary remedy is extended to this kind of tenancy only by the equity of the Act, which mentions only leases for years, or at will; but the modern doctrine of holding from year to year had but newly sprung up at the passing of the Act, and those cases which are now uniformly considered to be embraced by it, were thought to be provided for as tenancies at will; and this is a satisfactory reason for dispensing with the common law notice, except, perhaps, where the landlord proceeds by ejectment. A strict tenancy at will, being without a terminus, in the few cases in whi.ch it now exists, may be dissolved by a notice at. any time.
In Blashford v. Duncan, 2 Serg. & Rawle, 485, where *471 this point'was made, I intimated an opinion contrary to what I now hold. Subsequent reflection has convinced me I was mistaken, and I therefore retract all the sentiments I then expressed, that are applicable to this particular question. I am of opinion, that the judgment be affirmed.
Duncan J. —
.This is an inquiry of general concern. Almost every man stands in the relation of landlord or tenant. The notice to quit and the time of quitting the possession by tenant, under the provisions of the Act of 21st March, 1772, should not be left in doubt. The proceeding is before a newly created tribunal, not acting agreeably to the course of the common law, and therefore whatever is necessary to give such tribunal jurisdiction, must appear on the face of the proceedings. Does it so appear on this record ? The 12th section of that Act provides, that where any person having leased or demised any land, &c. to any person, for one Or, more years, or at will, paying rent, shall be desirous, upon the determination of the lease, to have again and re-possess his estate so demised, and for that purpose shall demand and require his lessee to remove from and leave the same, it' shall be lawful for such lessor to complain thereof to any two justices, 8tc. and upon, due proof being made that-the lessor had been quietly and peaceably possessed of the lands, &c. so demanded to be delivered up ; that he demised the same, under certain rents,‘to the then tenant in possession, and that the term is fully ended, then it shall be lawful for the said justices, forthwith to issue their warrant to the Sheriff, commanding him to summon twelve substantial freeholders to appear before them within four days, and the tenant, to shew cause why restitution should not be made of the demised premises; and if these facts shall appear, and that demand has been made of the lessee, three months before such application, the justices are to make a record of their finding, the freeholders are to assess the damages for the unjust detention, and the justices are to issue their warrant to the Sheriff to deliver possession, &c. to the lessor. The lease here, was for one year, and expired by its original terms, on the 1st of April, and notice was not given to the tenant until the 14th. The usage of the country, as to the general time of taking possession, an4 of surrendering up, is well known to be .on the *472 1st of April. The course of our husbandry, points out this as the only convenient period for a tenant to enter and quit. This usage is part of the common law, which Judges are bound ex ofició to know and recognise. This Act of Assembly, is perhaps one of the most salutary laws to be found in our Statute books. It promotes agriculture by giving security to the landlord and to the tenant. It prevents a surly landlord from dispossessing- his tenant at an unseasonable time of the year, and a perverse and crooked tenant from quitting, when the landlord cannot procure another tenant. This beneficial Act ought to receive a most liberal construction ; and I feel a rivetted conviction, that the letter of the Act, its spirit, and the common sense of the-matter, unite in proving, that the practical construction, as well as the grammatical construction is, that the notice to quit should be three months before the expiration of the lease. It. is true, that by the terms of the lease, without relation to usage, or the provisions of the Act, it has expired, and that the tenant who continues beyond the determinate time fixed by his lease, is a trespasser. So it is true, that by the terms of every lease, the tenant has, in strictness, no right to enter and take away the way going crop; and yet it is true this usage gives him such a right. In the adjudged cases, it is called the custom of Pennsylvania. It is agreed, that in a tenancy at will, which (to promote agriculture) now exists only nominally, and is in fact a tenancy from year to year, the tenant must hav^ reasonable notice to quit before the end of the term. This is the only kind of tenant to whom notice is necessary to be given, by the common or statute law of England ; consequently all the decisions in that country on any other species of tenancy, are irrelevant. So far as decisions in that country are to be received in, our Courts, decisions before the 4th July, 1776, they have fixed a construction on the Statute, which gives the landlord double rent against a tenant who holds over, but requires a notice to be given to the tenant to quit at the end of his term. Stat. 4 G. H. C. 28. Words more equivocal than those of the Landlord and Tenant Act, which describes the lessor who shall have summary relief, under the Act, as the person who is desirous upon the determination of the lease, to have again and . repossess, &c. On the Stat. oj G. H in Cutting v. Derby, 2 Wm. Bl. R. 1075, it *473 was contended, that the notice to quit, could not be previous to the expiration of the term, and indeed the words seem to look that way. De'Grey C. J, — 411 am satisfied that the notice to quit may be previous to the expiration of the term. It prevents surprise, and is most for the benefit of both landlord and tenant. The only objection to ,-it, is the order in which the words stand in the Act of Parliament, which weighs little against the sense and convenience of the other construction.” Gould J. — “ This is a remedial law, and to be liberally construed. I think the notice to quit ought to be before the end of the term, in order to prepare the tenant.” Blackstone J. — 44 Notice or requisition to the tenant to quit at the end of the term, implies that it must be previous. It would be absurd, because impossible to be complied with, to require, after the expiration of the term, that the tenant should quit at the expiration.” I agree with Mr. Justice Blackstone, that it would be absurd. It appears to me, without any disrespect to the senior members of the Court who differ from me, that to say a man shall be desirous of having again the possession upon the determination of the lease, when he never has expressed such desire until after its determination, is equally absurd. But what is conclusive with me is, the improbability that the. Legislature intended the landlord should alter the season of quitting a farm, which nature herself and the usage of the country had established to be the 1st of April-, give notice at any time in the succeeding year —give notice to quit at the commencement of harvest, without the benefit of a spring crop ; quit in bitter December. There should be a mutuality in all contracts. Now the law is settled against the tenant,- that the landlord for the second year may declare in assumpsit,-for the use and occupation, as from year to year, at the first rent, and the lease, though under seal, be given in evidence, as inducement on which to found the promise.
The law where the landlord suffers the tenant to hold over without notice to quit, presumes a new contract, — a tacit renovation of the old one. They are supposed to have renewed the old agreement. 13 Johns. 240.
I do not consider the suffering a tenant- to go into a new year, a mere circumstance, from which a jury might infer the fact of renovation, but a presumption of law, de jure *474 in jurem, a legal presumption, and that to give jurisdiction, three months’ notice to the tenant, before the expiration of his term, should appear in the proceeding* And if it were necessary to support the opinion I have formed, I would not have any difficulty in considering such a holding over as a tenancy from year , to year. This is not a novel doctrine ; for in Dagget v. Snowdon, 2 W. Bl. Rep. 1224, it was said' by the Court to have been settled by all the Judges, about ten years before, to avoid diversities of opinion, in tenures from year to year, which these kinds of holding over are held to be, that there must be six months’ notice to quit on either side, except where there is a special agreement, or the custom, of particular places intervened. In the case of Sims v. Steele, tried before me at Nisi Prius, I laid down the law to the jury, that both in rural and urban property, farms or houses, demised for one year, or any other determinate time, the landlord could not proceed against the tenant under the Act of Assembly, without giving him three months’ notice before the determination of his term, and that going into a new year was a tacit renovation of the contract for one year; and that upon what appeared to me then, and does now, on obvious principles of justice and convenience, the landlord could not create a Hew time of quitting ; and as' the tenant could not be dispossessed before the expiration of three months after notice, this would be putting it in the power of landlords to fix the most oppressive season of quitting on the tenant. Wherever a new year is entered upon, the parties have a right to hold each other to the tenancy for a year. The time, therefore, required for quitting, must expire exactly with the current year; for as on the. one hand, neither party has a right to put an end to the tenancy before the end of the year, so on the other hand, if the notice overslips its expiration, a new year is entered on, and a new right to enjoy for that year. Comyn’s Law of Landlords, 265.
Indeed as to farms, I thought the very able opinion of President Wilson in Brown v. Vanhorn, 1 Binn. 334 (note,) had settled the principle in conformity to the received opinion, “ that the notice to quit must expire within the season of the year when the tenant entered.” This decision has continued to be acted upon, and never until very lately called in ques» *475 tion. It has been directly recognised by my brother Gib-, son, in Blashford v. Duncan, 2 Serg. & Rawle, 485, who with great strength of argument, shews the real view of the Legislature. I cannot do better than repeat his words:— «The whole scope of the Landlord and Tenant Act seems to evince, that the Legislature contemplated a re-possession immediately at the end of the term. The inconvenience of a tenant being disturbed in the middle of a succeeding year, when the assent of the landlord may have been presumed from his silence, would be oppressive ; especially, as by the custom of the country, lands are only let at a particular season. The reason of Judge Wilson, in Brown v. Vanhorn, appears to my mind satisfactory. In giving a construction to a Statute, general convenience ought never to be lost sight of.” In Bigg and others v. Brozun, 2 Serg. & Rawle, 15, I think it was considered by the Court, I am sure it was by the counsel for the plaintiffs and the defen-. dants, that a tenant for a year, whose term had expired,' but to whom notice had not been given three months before its expiration, was not a tenant at sufferance. And in Fahnestock v. Faustenauer, 5 Serg. & Rawle, 174, the whole Court appeared to consider the case of Brown v. Vanhorn as well settled; and there it was held, that if a lease is made for a year, and the tenant is afterwards permitted to remain from year to year, a notice in the first month of a new year is illegal. What is the use of notice ? Why does the Act require it ? If the lease gives the tenant notice when his time will expire, why three months’ notice; why notice at all? Because it is so usual to lease for a year, both parties looking forward for a continuance, provided the landlord likes his tenant and the tenant his landlord ; and it is so much a matter of course to continue (where no previous notice) on the same terms, that the Legislature, regarding the usage, required the same notice to be given to a tenant for one year, as to a tenant from year to year; thus placing them, as regards the notice, precisely in the same state. The law prescribes the same notice.' Now all agree, that in the case of. a tenant at will, three months’ notice, before the usual period of removing and taking another farm, the end of the agricultural year, the 1st of April, .'must be given. The Legislature have not distinguished : there is no reason, or con *476 venience, or justice requiring a distinction. I have taken some pains to inquire into the practice in the country. The prevailing sense and practice have been, to give three months7 notice before the expiration of the term. And in Sims v. Steele, where on ah allegation that a different rule or usage had prevailed as to houses in the city, where rent was payable quarterly, evidence of usage was gone into, the weight of evidence was against such custom, but no witness examined denied the usage as to lands demised for agricultural purposes. In this they all agreed. The jury found for the plaintiff and against the custom. The defendant’s counsel, though the point as to the general law of landlord and tenant was reserved, yet never stirred the question in bank. I repeat the question. Why require notice, an hour’s notice, if after the expiration of the year, the tenant becomes a tenant at sufferance ? The answer is obvious. The notice is a notice of preparation, to enable the tenant to obtain another, farm in the season when he could get one. Notice on the the 14th of April in a neyr year, would not be such notice. The tenant is without a habitation, with his stock on hand ; is deprived of the means of subsistence for one whole year. To all conversant in the mode of letting land, it is well known, that leases are seldom made after the 1st of January. It would be a hopeless errand for a tenant to seek a farm after that time. And this is the reason why public convenience required the three months’ notice previous to the determination of the lease; ’arid,'this! is the reason why the law required it. The landlord, if he was tired of his old tenant, might be sure of a new one; and if the tenant was tired of his landlord and desirous of change, he might obtain another plantation to farm.
If this were res integra, I should have given the Act this construction. But if I even doubted, as there has been a contemporaneous, liberal, and beneficial exposition, I would not disturb it. A better construction could not be given, than general usage has given, to this Act; giving security to the landlord and protection to the tenant. I am therefore of opinion, that the judgment of the Court of Common Pleas affirming the proceedings of the justices and freeholders, be reversed, and the proceedings quashed; because it appears *477 on the proceedings, that they had no jurisdiction, and exceeded their authority in dispossessing a tenant to whom legal notice to quit had not been given ; and that this excess of authority is as apparent as if it had appeared that no notice whatever had been given ; an irregular notice being no notice. But a majority of the Court being of a different opinion, the judgment must be affirmed.
Judgment affirmed.

 See on this subject, Cobb v. Stokes, 8 East, 358.