Boggs administrator of CALBRAITH *against* BLACK.

IN ERROR.

*Saturday,*
April 2d.

WRIT of error to the Common Pleas of *Dauphin* county. *Calbraith* on the 29th *March* 1782, leased to *Black* a tract of land, to hold from year to year from the date during the pleasure of the landlord, under an agreement that the tenant should improve the land by cutting off the timber so as to clear it, put it under fence, and pay the taxes. On the 26th *April* 1802, he instituted a proceeding under the landlord and tenant law, to turn *Black* out of possession; and the jury by their inquest found that the term was fully ended on the 29th *March* 1801, that the landlord in the month of *February* 1800 gave *Black* notice to quit on the said 29th of *March*, and that notice to quit was given at " divers other days and times, to wit, " on the 25th of *January* last." (1802). They found all other material facts, and possession was awarded to the landlord. The record of the inquisition was removed by *certiorari* to the Common Pleas, where the judgment of the justices was reversed, and restitution ordered; and the cause was now brought up by writ of error.

*Notice to quit at the end of a certain year, is not waived by the landlord's permitting the tenant to remain in possession an entire year after the expiration of the notice; notwithstanding the tenant held by an improving lease, that is, to clear and fence the land and pay the taxes in lieu of rent. Qu. Whether the notice to quit, required by the landlord and tenant law, must be given three months before the end of the term.*

*Ingersoll* for the defendant argued, that by the finding of the jury, the three months' notice required by the act of 1772, had not been given. The notice in *February* 1800 to quit on the 29th *March* 1801, was waived; for as this was an improving lease, suffering the tenant to stay and improve the land was equivalent to the acceptance of rent due after the end of the term, which was clearly a waiver of notice. *Charter* v. *Cordwent.* (*a*) *Black* was then tenant for a year ending 29th *March* 1802; and if so, the notice on the 25th *January* was too short, as it was

(*a*) 6 *D. & E.* 219.

not given three months before the end of the term. This is the law in *England* as it respects the half year's notice, and has been ruled to be the true construction of our act by President *Wilson*, at *Bucks*. (*a*)

*Hopkins* for the plaintiff said, that the waiver was a question for the jury, which was negatived by their finding, and which did not appear from any thing on the record; on the contrary, the other notices kept it alive. But if the case turned on the notice of the 25th *January* 1802, it would nevertheless be with the plaintiff, since it had been repeatedly held that the notice was sufficient if given any time before the end of the year, provided it was three months before the application to the justices, which in this case was on the 25th *April* 1802.

TILGHMAN C. J. delivered the court's opinion.

This is a proceeding by a landlord against his tenant under our act of Assembly. The jury found in favour of the landlord. The proceedings were removed to the Common Pleas of *Dauphin* county where a decision was made in favour of the tenant; on which judgment a writ of error was brought in this court.

(*a*) BROWN
*v.*
VANHORN.
} THIS was a *certiorari* from the Common Pleas of *Bucks* county, to remove the proceedings before two justices of the peace, under the landlord and tenant law, in which judgment was entered in favour of *Brown*, the landlord. One of the exceptions against the proceedings was, that the notice to leave the demised premises was not given three months before the expiration of the time.

WILSON President. The notice to quit appears from the record to have been given less than three months before the expiration of the term. The defendant is stated to hold under a parol lease from year to year, during will. In such a case the lessor cannot determine his will at any time he pleases; the moment another year commences, the tenant has a right to hold until the expiration of it, and cannot legally be required by the landlord to leave the premises at any other period. By the common law, ever since the reign of *Henry* 8, where there was a lease from year to year during the pleasure of both parties, it was required that half a year's notice to quit should be given by the landlord to the tenant before an ejectment could be brought. 2 *Bl. Com.* 147. And there have been repeated determinations that the notice must be given half a year before the end of the year, or the ejectment cannot be supported. The Court of King's Bench in the case of the Lessee of *Flower* v. *Darby* and *Bristow*, 1 *D. & E.* 159. decided that the notice to quit must end at the expiration of the year, and several prior decisions of the same kind were cited. The act of Assembly on which the pro-

The objection to the finding of the jury is that it does not appear that sufficient notice to quit the premises was given by the landlord.

The jury find that the lease expired 29th *March* 1801, and that notice was given in *February* 1800 to quit on the said 29th *March* 1801, and that the tenant had refused and did refuse to comply with the notice; and that notice to quit was also given at divers other times, particularly on the 25th *January* 1802. The inquest was held 28th *April* 1802. The application to the justices by the landlord was made 26th *April* 1802.

The act of Assembly requires that it should be made to appear to the jury " that the term is fully ended, and that demand had " been made to leave the premises three months before the ap- " plication to the justices."

The objection raised by the counsel of the tenant is this, that although the term expired 29th *March* 1801, yet as the land-lord did not proceed to remove the tenant agreeably to his first notice, the tenant stood in the situation of a person who had a lease from year to year; and being in that situation, the land-lord ought to have given him notice to leave the premises three

1808.

Boggs
*v.*
Black.

ceedings in the case before us are founded, requires but three months' notice, and provides a summary remedy for the landlord instead of an eject-ment. But it does not alter the law with regard to the time at which the notice must be given. To enable the landlord to recover, the lease must be *fully ended,* and the lease cannot be fully ended unless three months' notice has been given before the end of the year; for the tenant is legally in posses-sion, as he has a right to hold three months after notice; another year has commenced, and by the agreement which the law implies, he is entitled to continue in possession during the whole of it. The landlord cannot determine his will by a shorter notice than one for three months.

The practice in the city of *Philadelphia* is I believe, contrary to the prin-ciple on which this court now decide; but I am not aware that it has been recognised in any judicial decision. It may produce no inconvenience there, though it would be very injurious if adopted here. It is for the interest of both landlords and tenants, that the rule should be as the court has stated it; for otherwise, as farms are almost universally let only at a particular sea-son of the year, the tenant might be dispossessed at a time when he could not procure another farm; and on the same principle he might leave it at a period when his landlord could not be supplied with another tenant.

Proceedings set aside.

*Condy* for the plaintiff. *Sitgreaves* for the defendant.

[The reporter is indebted for the above note to Mr. President WILSON.]

1808.

Boggs
v.
Black.

months previous to the 29th *March* 1802. But the court are of opinion that nothing appears on the record to shew that the tenant was to be considered in any other light than a trespasser after 29th *March* 1801. It is not found that the landlord accepted rent which accrued after that time; or did any other act which directly or indirectly implied a renewal of the lease. The jury have found all the facts which are required by the act of Assembly as a foundation for judgment of restitution to be awarded by the justices. This court are therefore of opinion that the judgment of restitution given by the justices was proper, and that the judgment of the Court of Common Pleas reversing the said judgment of the justices, be now reversed.

Re-restitution of the demised premises to the landlord, is ordered.

Judgment reversed.