[PHILADELPHIA, FEBRUARY 11, 1833.]

∤ LESLEY and another *against* RANDOLPH.

#### IN ERROR.

A lease for no determinate period of time, but by which an annual rent is reserved, payable quarterly, is a lease from year to year, so long as both parties please. It is binding on the parties prospectively for one year only, capable, however, of being extended to a second, third, fourth or fifth year, and so on, unless determined by the dissent of either party, which may be done at the close of any one year by giving three months previous notice to that effect, but at no time before the close of a year, after it has once commenced.

Consequently, where the tenant continues to hold the demised premises until after the commencement of the second year, without offering to surrender the possession to the landlord, or receiving from him notice to quit, he is entitled to hold for another year in despite of the landlord, but at the same time is bound to pay the year's rent quarterly, according to the agreement.

THIS was a writ of error to the District Court for the City and County of *Philadelphia.*

The plaintiffs in error, *Robert Lesley* and *William Meredith*, trading under the firm of *Lesley & Meredith*, were defendants below, in an action brought against them by the defendant in error, *George F. Randolph*, to recover part of a year's rent claimed under the circumstances set forth in the following case stated :

(Lesley and another *v.* Randolph.)

CASE STATED.

" The plaintiff as owner of the store or warehouse No. 241 High street, in the city of *Philadelphia*, leased the same to the defendants on the 23rd day of *April*, 1828, according to the terms of the following agreement, executed by the defendants, and assented to by the plaintiff, *viz.*

'We have this day rented of *George F. Randolph*, the store or warehouse No. 241 High street, the rent to be eight hundred dollars per annum, payable quarterly. It is expressly understood and agreed by us, that we are not to relet the premises, or any part thereof, to any person, or for any purpose or business, without the approbation and consent of *George F. Randolph.*

(signed)            '*Lesley &amp; Meredith.*'

'*Philadelphia, April,* 23rd 1828.

" The defendants immediately after the execution of this agreement, entered upon the premises and continued to occupy the same till *July,* 23rd 1829, when they removed, having paid all the rent due at that time, and thereupon tendered the key of said store or warehouse to the plaintiff, who refused to receive it.

" ' On the first day of *December*, 1829, by the mutual consent of the plaintiff and defendants, and without prejudice to the rights of either party, the said store or warehouse was let to a third person.

" ' If the court be of opinion that the plaintiff had a right to consider the defendants as tenants of the premises for a second year, in consequence of their retaining possession under the above agreement of *April* 23rd 1828, after the expiration of the first year as above mentioned, judgment is to be entered for the plaintiff for two hundred eighty-four dollars, forty-five cents, and for interest on the same from *December* 1st 1829, till the rendering of judgment, with costs of suit; otherwise judgment is to be entered for defendants with costs of suit; either party to be entitled to a writ of error."

The District Court gave judgment for the plaintiff for three hundred and nineteen dollars and ten cents, and the defendants removed the cause to this court by writ of error.

*Chauncey,* for the plaintiffs in error.—The lease set out in the case stated, is either a lease for a year or for a quarter only. Whether it be one or the other is immaterial to the plaintiffs in error, for in either view of it, the judgment of the court below is erroneous. If the demise was for a year, then, according to the case of *Logan* v. *Herron,* 8 *Serg. & Rawle,* 459, upon notice given before the expiration of the first quarter of the second year the tenants might have been dispossessed by the landlord, and of course they had a right to quit at the time they did, or there would be a want of reciprocity in the obligations of the parties.

If the demise was for a quarter, it is equally plain that the tenants, having surrendered the property leased, and tendered the stipulated quarterly rent before entering upon the second quarter of the new

(Lesley and another *v.* Randolph.)

year, were discharged from all further liability to the landlord. They had a right, if the lease was to endure for so short a term, to leave the premises at the end of the first quarter, or of any subsequent one. Such being the agreement of the parties, the landlord asked too much, when he demanded payment beyond the period for which the rent was tendered, and the court below erred in the judgment which gave it to him.

*Stroud* for the defendant in error.—The lease in this case was not for a definite period; it was not for a single year, or for any portion of a year, but was without limitation as to time, which, by construction of law, is a lease from year to year. A general taking at an *annual* rent, is a lease from year to year. *Chamb. Land. and Ten.* 355. *Comyn's Land. and Ten.* 8. 91. 303. 2 *Bl. Com.* 147. *Right* v. *Darby*, 1 *T. R.* 161. The decision in *Logan* v. *Herron*, which is supposed to interfere with the judgment of the court below, was the case of a lease for a *fixed period*, " for one year from the 1st of *April*, 1816," and the language of the court cautiously restricts the decision to such a case. "Where the termination of the lease is uncertain," says C. J. TILGHMAN, 8 *Serg. & Rawle*, 461, "and depends upon the will of the landlord, it is necessary that notice should be given during the lease. As where a lease is made for a year, and so from year to year as long as it pleases the landlord, or as long as it pleases both parties, if the landlord wishes to determine the lease, he must give notice three months before the expiration of the year." The same distinction is asserted by Judge GIBSON, in page 470. The earlier case of *Bedford* v. *M'Elherron*, 2 *Serg. & Rawle*, 49*-50*, is to the same effect. *Diller* v. *Roberts*, 13 *Serg. & Rawle*, 60, which is the last reported decision of our courts upon the doctrine of an implied renewal of a lease, by the holding over of the tenant, and the omission of notice to quit by the landlord, contains nothing in opposition to what is contended for by the defendant in error, but is rather confirmatory of his views.

The opinion of the court was delivered by

KENNEDY, J.—It has been contended for the plaintiffs in error, that the agreement under which they took the warehouse, amounted only to a specific letting for one year, and no more; and that according to the decisions of this court, in the cases of *Boggs* v. *Black*, 1 *Binn.* 335, and *Logan* v. *Herron*, 8 *Serg. & Rawle*, 459, they became immediately upon the expiration of the year, to wit, the 23rd of *April* 1829, tenants at sufferance, liable to be turned out of possession at will of the defendants in error; and were not bound therefore to pay for the use of the warehouse after that, longer than they continued to occupy it; and were at liberty to surrender the possession at any moment they pleased. The nature of the lease in the latter of the above cited cases has been relied on as being substantially the same with the lease in the present case.

I however think there is a difference which has been recognised by

(Lesley and another *v* Randolph.)

courts, judges, and writers on this branch of the law.   In *Logan* and *Herron* the lease was *specifically* for one year.  Nothing appears on the face of it from which any possible inference could be drawn, that it was within the contemplation of the parties that it should endure beyond that time.  If either party therefore became desirous, at or before the expiration of the year expressly agreed on, to continue the relation of landlord and tenant beyond that period, he surely had no reason to calculate upon it without first knowing the will of the other party in respect to it, and if he did not choose to take the trouble of informing himself, I do not see any good reason he could afterwards have to complain that the other party, without giving him three months notice previously to the expiration of the year of his intention, had resolved to decline all further renewal of the lease.  It seems to be established in *England*, as well as here, that when a lease or demise is determinable on a certain event, or at a particular period, no notice to quit is necessary, because both parties are equally apprised of the determination of the term; and it is not material whether it be only for a single year, or any longer period.  See *Chamber's Landlord and Tenant*, 750. *Jordan* v. *Ward*, 1 *H. Bl. Rep.* 97. *Godsell* v. *Inglis*, 3 *Taunt.* 54. *Bing.'s Landlord and Tenant*, 177 ; *Cobb* v. *Stokes*, 8 *East*, 358. *Right* v. *Darby*, 1 *Term Rep.* 162. *Messenger* v. *Armstrong*, 1 *Id.* 53. *Bedford* v. *M'Elherron*, 2 *Serg. & Rawle*, 50*. *Boggs* v. *Black*, 1 *Binn.* 335. *Logan* v. *Herron*, 8 *Serg. & Rawle*, 459. *Van Cortlandt* v. *Parkhurst*, 5 *Johns.* 128. *Adams on Ejectment*, 101-2.

Now the lease or agreement in the case under consideration is not expressly for any determinate period of time, and it is only by construction that a limitation can be affixed to it.   It, at an early period in England, would have been considered a letting at will, but, as it is not so in express terms, it would at the time of our revolution have been deemed a lease from year to year; and more especially so, as an annual rent is reserved to be paid.   2 *Bl. Com.* 147, *Chitty's* ed. and note (11).  *Adams on Eject.* 102-3.  Sir *William Blackstone* says, speaking of tenancies at will, " Courts of late have rather held them to be tenancies from year to year, so long as both parties please, especially where an *annual rent* is reserved." 2 *Bl. Com.* 147. In *Bree* v. *Lees*, 2 *Bl. Rep.* 1173, Lord Ch. Just. DE GREY, says, " All leases for uncertain terms are *prima facie* leases at will; it is the reservation of an *annual rent* that turns them into leases from year to year." And Sir J. MANSFIELD, Ch. Just. in *Richardson* v. *Langridge*, 4 *Taunt.* 131, lays down the same rule in a case put by him by way of illustrating it in the following words : " If there were a general letting at a *yearly* rent, though payable half yearly or quarterly, and though nothing were said about the duration of the time, it is an implied letting from year to year." Now this meets the description of the lease in question in every particular with the utmost precision, which is a general letting without any thing being said as to the duration of the time, at a *yearly* rent of eight hundred dollars payable quarterly.  It

(Lesley and another *v.* Randolph.)

also comes directly within the description of a lease from year to year, as it is given by Messrs. *Chambers, Bingham,* and *Comyns,* who have each written and compiled a treatise on-this subject. Mr. *Chambers,* in his work, page 355, says, that " a general taking at an *annual* rent is a lease from year to year." See *Bing. Landlord and Tenant,* 177, and *Comyn's Landlord and Tenant,* pp. 7, 8, 91, and 303, all to the same effect. Besides, it appears to me, that the intention of the parties to the lease in the present case, so far as it can be collected from the face of the writing itself, requires it to be construed a lease from year to year, and so on as long as both parties pleased; otherwise some determinate point of time as its end or fixed period of duration, would have been expressly mentioned. But if it were even doubtful whether such was the intention of the parties, still upon the principle that every lease is to be taken most strongly against the lessor, and this construction being the most favourable for the lessees, it ought to prevail. There is also another view to be taken of this agreement, which still further satisfies me that this is the true construction to be put upon it, which is this : suppose the plaintiffs in error had continued to occupy the warehouse for the space of eighteen months or two years without having paid any rent, and without any dissent having been expressed to their so holding it, could they not have been distrained on at common law, or have been sued for the rent for the whole of the time which had elapsed under this agreement as an entire contract, which had by its terms opened at the commencement of every succeeding year to embrace it, and had become binding upon the parties for that year, in the same manner as if the agreement had been for a fixed and definite period which included it ? There is certainly no objection to an affirmative answer to this question to be found on the face of the agreement ; and without giving to it this construction, great injustice might occasionally accrue to either party. I however do not wish to be understood as entertaining the opinion that a lease for a year, and so from year to year as long as both parties shall please, is a lease for the term of two years certain at its commencement. My idea of it is this ; that it is binding prospectively on the parties for one year only, capable however of being extended to a second, third, fourth or fifth year, and so on, unless determined by the dissent of either party, which may be done at the close of any one year, by giving three months previous notice to that effect, but at no time before the close of a year after it has once commenced.

Whether it be a lease in the first instance for one or two years certain, is a question upon which there has been some diversity of opinion.

*Brooke,* in his *Abr.* tit. *Tenant, per copy de court roll,* pl. 17, says, " By the best opinion it is a lease for years." This according to what is laid down in the *Bishop* of *Bath's Case,* 6 *Co.* 36, as necessary to constitute a lease for *years* would make it at least two years, as less would not satisfy the plural number. The case of *Agard* v. *King,*

*Cro. Eliz.* 775, declares it to be a lease for two years certain.   In the *Bishop* of *Bath's Case*, 6 *Co.* 36, it was resolved, after three years at most, to be a lease at will ; which *Rolle* in his *Abr.* 851, seems to think means a lease for two years at least, but after three years at most, only an estate at will.   In *Bellasyse* and *Burbridge*, 1 *Lutw.* 213, it was held to be a lease for two years ; and in *Stanfill* v. *Hickes*, 1 *Ld. Raym.* 280.   S. C. 2 *Salk.* 413, 3 *Ib.* 135, it seems to have been considered a lease for two years, and after that a lease only at will.   And in a late case of *Denn* v. *Cartwright*, 4 *East*, 31, it was pronounced to be a demise for two years at least.   But as no authorities are vouched in the report of this case, it is probable that the decision was made without an examination of them.

On the other side in an anonymous case, 2 *Salk.* 413, it was held, if *A.* demised lands to *B.* for a year and so from year to year, that it was not a lease for two years and afterwards at will, but it was a lease for every particular year, and after the year was begun, the defendant could not determine the lease before the year was ended.   S. C. *Holt's Rep.* 414, ruled by Chief Justice HOLT, at the summer assizes at *Lincoln*, 1699.   In *Leighton* v. *Theed*, 1 *Ld. Raym.* 707, Lord Chief Justice HOLT ruled, that if *A.* make a lease to *B.* for a year, and so from year to year, *quamdiu ambabus partibus placuerit, A.* may determine his will at the end of *any year*, but if a new year be begun, it cannot be determined before the end of it.   He also ruled the same point accordingly at a trial upon the summer assizes at *Lincoln*, 1699, between *Lely* and *Green.*

In *Dod* v. *Monger*, 6 *Mod.* 215, S. C. *Holt*, 416, he said, " If a lease be for a year, and so from year to year as long as both parties shall please, it is a lease binding but for one year ; but if the lessee without countermand of the lessor, enter upon the second year he is bound for that year, and so on.   And so in *Fenwick* v. *Lady Grosvenor*, 12 *Mod.* 610, he ruled the same to be a lease for one year absolutely ; and if the lessee continues on the *first day* of the *second year*, he is bound for that year also : and so is the lessor if he has not warned him away before the beginning of the second year."

I have adopted the opinion and decision of Ch. Just. HOLT ; first, because I believe it was the settled law of his time ; next, because it comports best with the common and ordinary understanding and meaning of the terms employed in such leases ; and lastly, because I consider it as agreeing best with the true grammatical construction of them.

Indeed I feel altogether at a loss to conceive how the assent of the parties is to be made out for more at any time than one year prospectively and absolutely.   But that it amounts to a positive agreement for one year I think is clear ; and further, if the holding should continue until a second year has commenced without the dissent of either party, it becomes a lease for two years certain, and cannot be determined by either party before the end of the second year ; and the meaning of the words " from year to year," is, that the holding shall only cease at the end of the year and at no other time : and if the

(Lesley and another *v.* Randolph.)

holding were to continue in like manner for three, four, five or six years, it would become, in respect to time past, and as a contract executed, a lease for just as many years as had elapsed: and at the end of six years, might be declared on as having been a lease for that number of years, by either party.   This was expressly ruled and settled in *Legg* v. *Strudwick*, 2 *Salk.* 414, and in *Birch* v. *Wright*, where it is placed in a very clear and satisfactory point of view, by Mr. Justice Buller, 1 *Term Rep.* 380.

Believing the lease in question then to be a lease from year to year, the plaintiffs in error, having continued to hold the demised property until after the second year had commenced, without offering to surrender the possession to the defendant in error, or having received from him any notice to quit, became tenants under the agreement, entitled to hold it for another year, in despite of the defendant in error ; but at the same time bound upon the principle of reciprocity to pay the rent of three hundred dollars quarterly.   The defendant in error could only have put an end to the lease, by giving a notice to the plaintiffs in error, at least three months before the end of the year, to surrender to him the possession, as soon as that time should come around.   This principle is settled or recognized in *Bedford* v. *M'Elherron*, 2 *Serg. & Rawle*, 50*.  *Brown* v. *Vanhorn*, 1 *Binn.* 334, in note. *Fahnestock* v. *Faustenauer*, 5 *Serg. & Rawle*, 174. *Thomas* v. *Wright*, 9 *Serg. & Rawle*, 87.   Indeed, wherever the lease is not for any precise, express and determinate period of time, notice seems to be requisite, as a reasonable and necessary protection against surprize, and the consequent loss or inconvenience that might result therefrom ; and has, in modern times, been extended to a tenancy at will, on account of its uncertain duration.   See *Parker* v. *Constable*, 3 *Wils.* 25.

We think that the judgment of the District Court was right, and it is therefore affirmed.

Judgment affirmed.