## Jones *v.* Whitehead.

The writ of estrepement may issue for any spoil made by tenant for life, upon lands or woods, to the prejudice of him in reversion. This writ lay at the common law, after judgment obtained in an action real, on a writ of right, before possession was delivered by the sheriff, to stop any waste which the defendant might commit. By the statute of 6 Edward 1, it could be issued by any person having an action pending.

In Pennsylvania it may always be issued, when an action of ejectment is pending, or when lands have been leased for a term of years after notice to quit, or by a mortgagee or judgment-creditor, after lands have been levied on and condemned; or at the instance of a purchaser at sheriff's sale; or for quarrying and mining, if such or other acts will do lasting injury to the freehold.

This writ may be directed to the tenant or his servant in possession of the land, and if after service they continue to commit waste, an attachment will issue. When directed to the sheriff, he must arrest the commission of waste by a sufficient force, and may have the defendant committed to prison.

An injunction will issue out of Chancery to prevent the commission of waste by one who has but a limited interest in, or possession of the property, and when the acts about to be done will work a lasting injury to the inheritance.

So also will an injunction issue to stay waste against a tenant from year to year, or a lease for a longer period, where he does not farm the premises in a husband-like manner, but contrary thereto, and is thereby committing waste upon the premises. Nor is such tenant permitted to remove anything from the land except those things which he could do, according to the custom of the country where the farm is situated.

An injunction was issued to prevent a defendant from taking and carrying away from the farm dung, compost, muck, hay, straw, fodder, &c., where he only held the premises from year to year.

In all such cases of *waste*, at the common law, where a Court of Chancery would grant an injunction, the writ of estrepement will lie in Pennsylvania, if the case comes within the provisions of any of the statutes. A tenant, when he rents a farm, is bound to farm it in an honest and husband-like manner, according to the custom of the country where the land is situate; and, if the tenant attempts to divert the land from the usual course of husbandry, in such a way as materially to injure it, a Court of Equity will restrain him by injunction from committing waste. And the same restraint may be effected by the writ of estrepement.

Where property is leased for a fixed and definite term, and the lease then to terminate, no notice to quit is required, for such is a notice at the time of making the contract, and supersedes the necessity of further notice.

*Aug.* 21. In this case a writ of estrepement had been issued out of the Court of Common Pleas, on the petition of the plaintiff, alleging that the defendant was a tenant on his farm for a year, and that he was committing *waste* upon the premises, by ploughing down sod and grass for the purpose of sowing the land with corn; and that, if he was permitted to persist in that course, these acts would cause a great and lasting injury to the freehold interest of the plaintiff. That the defendant was acting in this respect

contrary to the rules of good husbandry, and violating the legal and implied conditions of his lease, which was by parol.

After the issuing and service of the writ of estrepement, the defendant appeared by his counsel, and moved for a rule to show cause why the estrepement should not be dissolved. On the hearing, numerous depositions were presented as to the facts connected with the cause, which are sufficiently referred to in the opinion of the Court, without giving them *in extenso*, on this brief statement of facts. Numerous legal questions were discussed by the counsel, all of which are fully noticed by the Court.

*H. G. Jones* for the plaintiff.

*D. M'Loughen* for defendant.

The cause was argued before PARSONS, Judge, in June, 1847, while the other members of the Court were absent, who delivered the following opinion :—

Numerous legal objections have been raised against the propriety of sustaining the present proceeding; and there has been an extended discussion of the facts in the case. Some of the questions of law which have been argued are of considerable importance, and require a careful consideration. All the questions which it is deemed important for us to decide, may be arranged under three distinct propositions, or reasons why the writ should be dissolved.

1. Because it is contended that the acts complained of by the plaintiff in his petition, if committed by the defendant, are not in law *waste*. 2. That, before this writ could be sued out by the landlord, he was required by the Act of Assembly in relation to this subject, to give notice to the tenant to quit. 3. That, under the evidence disclosed, the complaint made by the plaintiff that *waste* has been committed, is not sustained, because the acts alleged to have been done are not an injury to his farm, and certainly not to his reversionary interest.

Before we proceed to the consideration of these several propositions, it may be profitable for their elucidation to take a brief view of the nature and history of the writ of estrepement. The term *estrepement* is an old French word, from *estropier*, or, as said by some, from the Latin *extirpare*, and signifies the same as our English word *waste*, or extirpation. And the derivation would seem to mean any spoil made by tenant for life, upon any lands or woods,

to the prejudice of him in reversion; it also signifies the making land barren by continual ploughing. And one writer says that "estrepement is the unreasonable drawing away the heart of the ground by ploughing and sowing it continually, without manuring or other good husbandry, whereby it is impaired;" and may be applied to the cutting down trees, or lopping them in violation of law. Hence we find this word is used for the name of a writ, which lay at the common law after judgment obtained in an action real, as on a writ of right, before possession was delivered by the sheriff, to stop any waste which the defeated party might be tempted to commit in lands which were determined no longer to be his: 2 Inst. 328. But by the statute of Gloster, 6 Ed. 1, ch. 13, it was provided, that this writ might be issued by any person having an action depending, as a formedon, writ of right, &c., to prohibit the tenant from committing waste during the pendency of the suit, lest, knowing the weakness of his title, he might be tempted to injure the land of the rightful owner.

In Pennsylvania, the authority for issuing this writ arises under three different Acts of Assembly. The first, the Act of 2d of April, 1803, which provides for its being issued when any action of ejectment is pending. The Act of the 29th of March, 1822, provides that the writ of estrepement may issue in cases where lands are leased for years, or at will; or at the instance of any purchaser at sheriff's sale; or on the application of any mortgagee, or judgment-creditor, after the lands derived by such judgment or mortgage shall have been condemned by inquisition. The Act of 27th March, 1833, makes quarrying and mining, and all such other acts as will do lasting injury to the freehold, *waste*.

But in England the most effectual remedy against voluntary waste, in most cases, is by an injunction from a Court of Chancery.

In this state, even under the equity powers extended to the Supreme Court and Court of Common Pleas of this county, it may be questionable whether the only summary method by which the waste on land can be prohibited is not by the writ of *estrepement*, if the acts complained of bring the case within any of our Acts of Assembly. It is a point on which no opinion is now indicated. If this writ is faithfully executed, the remedy by *estrepement* seems to be ample.

This writ, forbidding waste, may be directed to the tenant or person in possession himself; and if it be, should he afterwards proceed to commit waste, an action may be sustained upon the foundation of this writ, wherein the only plea of the tenant can be,

*non fecit vastum contra prohibitionem;* and if the jury find upon their verdict that he did, the plaintiff may recover costs and damages, or the party may proceed to punish the defendant for the contempt: Moore's Rep. 100. If the writ is directed to the tenant and his servant, or those in possession, and they are duly served with it; if they afterwards commit waste, they may be committed to prison for this contempt of the writ.

The writ may be directed to the sheriff, and, if waste is committed after it is served, he may raise the *posse comitatus* to resist or restrain those who commit the waste: Hob. 85. And it has been said the sheriff may likewise imprison offenders, if he be put to it; and he may make a warrant to others to do it: 2 Inst. 329; 5 Rep. 115; 1 Tomlinson, 677.

We observe at once the execution of this writ is very similar to the effect of an injunction issued by a Court of Equity; and it is to the chancery decisions that we must look for the authorities which will be our guide in the determination of this cause.

No principle of law is better settled, than that a Court of Chancery will interpose by injunction to restrain such persons as tenants and others from committing waste, having but a limited interest in, or possession of property, when the acts about to be done will work a lasting injury to the inheritance. This has been fully admitted on the argument. But it has been contended, this is the limit of the exercise of the power of that Court, and that it has been extended no further. Hence it has been said, that a Court of Chancery will not interpose their authority by injunction, where the acts done, or threatened to be done, are *only* contrary to the course of good husbandry, and work no ultimate irreparable injury to the freehold.

But such, I apprehend, is not a correct understanding of the action of a Court of Equity, nor have their powers been circumscribed to such a limit; for we find that it is ruled in Onslow *v.* ———, 16 Ves. 173, that the principle relative to the exercise of the power of a Court of Chancery in granting an injunction to stay waste, applies equally in the case of a tenancy from year to year as to a lease for a longer term; and that the Judges in that Court have uniformly decided, that a tenant from year to year must treat a farm in a husband-like manner, according to the custom of the country; and when he does *not*, a Court of Chancery will give its aid to restrain him from doing an injury to the premises, by acts contrary thereto: and so far has this authority been exercised, that they will not permit a tenant to remove anything from the

land, except those things which he could do according to the custom of the country where the farm is situated, when the removal of such things be contrary to the good husbandry of the farm.

Therefore, it was ruled in the case of Lathrop v. Marsh, 5 Ves. 258, where it was alleged in the affidavits for the injunction, that the defendant was taking and carrying away from the farm, dung, compost, or muck, hay, straw, and fodder, &c.; and that he held from year to year, although an injunction was not then granted, yet the Lord Chancellor recognised the principle that one would lie. And in the case of Pultney v. Shelton, in the same book, p. 147, an injunction *was granted* against carrying away from the premises the dung, soil, and compost, or the crops growing from seeds, &c.; and against ploughing meadow, and committing wilful waste. In the case of Pratt v. Brett, 2 Modd. 373, an injunction was issued against ploughing up ancient meadow, or any of the old pasture land belonging to the farm, and from sowing mustard seed, or other pernicious crops, or from removing from the land, hay, straw, or dung, or doing any other waste upon the premises. The cases of Perrot v. Perrot, 3 Atk. 94, Robinson v. Letton, Ib. 210, Strathmore v. Bowers, 2 Bro. C. R. 73, Kimpton v. Eve, 2 Ves. & B. 349, fully sustain the doctrine, that for waste committed, or about to be committed, by a tenant from year to year, or persons having other estates, a Court of Equity will restrain the person in possession by injunction.

And we find it laid down as an elementary principle, that the conversion of land from one species to another, is waste. To convert wood to meadow, or pasture into arable; to turn arable, meadow, or pasture, into woodland; or to turn arable or woodland, into meadow or pasture, are all of them waste: Hob. 296. And Lord Coke observes upon it, and says: "It not only changes the course of husbandry, but the evidence of the estate; for when such a close, which is conveyed and described as pasture, is found to be arable, and *e converso:*" 1 Inst. 53; 1 Lev. 309; 1 Tompl. 767. Nor can the lessee change the nature of the thing demised.

The question as to the right for a Court of Chancery to grant an injunction in cases of waste, and when that Court will give its aid, has been fully considered in this country. In the case of Kane v. Vanderburgh, 1 Johns. Ch. 11, Chancellor Kent, in his opinion, refers with approbation to most of the English cases above cited, and observes: "Chancery goes greater lengths than the courts of law in staying waste. It is a wholesome jurisdiction, to be liberally exercised in the prevention of irreparable injury, and

depends on much latitude of discretion in the Court :" Douglas *v.* Wiggins, 1 Johns. Ch. 434. " So an injunction to stay waste may be obtained against a tenant from year to year, after notice to quit, to restrain him from removing the crops, manure, compost, &c., contrary to the usual course of husbandry :" 2 Story's Equity, 197. So it may be obtained against a lessee, who is making material alterations in a dwelling-house, by changing it into a store or warehouse : 1 Johns. 434; 2 Story, 197.

From the cases above referred to, it is clear that the Courts of Chancery, in England as well as in this country, do not restrict their power of granting injunctions to that species of *waste* which goes merely to the destruction of the freehold, or a part of it; nor is it confined to that species of waste which is sometimes called a lasting injury to the inheritance; as by cutting down timber, or other trees growing upon the land, or the destruction of buildings ; or a direct injury to them; but it seems to be extended to all those kinds of *waste or injury to the inheritance*, which deteriorate the land when used for agricultural purposes; especially when carried to such an extent as will materially injure the rights of the landlord or reversioner when coming into the possession; so that the property cannot be well appropriated to those purposes for which it was originally intended, when he parted with the possession. The doctrine seems to be, that the tenant is bound by law, when he rents, to farm the land in an honest and husband-like manner, according to the custom of the country where the land is situate. And if the tenant attempts to divert the land from the usual course of husbandry in such a way as materially to injure the same, a Court of Equity will restrain him by injunction from committing waste of this description. As I understand the decisions, the Courts proceed upon the principle that it is a violation of the implied contract in the lease.

If, then, a Court of Chancery would interpose by injunction, it is clear this Court have the power, under the Act of the 29th of March, 1822, to interfere and restrain a tenant by the writ of estrepement; for that Act authorizes this writ to issue in all cases when *waste* has been committed, or when it is threatened, if the plaintiff's case is within any of the provisions mentioned in the Act.

Entertaining this view of the law, in my opinion the acts complained of by the plaintiff, if sufficiently sustained by proof, are *waste* within the law, and that it is waste of such kind as will justify the Court in sustaining the writ.

The second reason alleged for dissolving the estrepement, is, that before it issued the landlord had given no notice to the tenant to quit. The language of the Act of Assembly, in relation to this point, is as follows: "It shall and may be lawful for any owner or owners of lands or tenements, leased or let for years, or at will, at any time during the continuance, or after the expiration of such demise, and due notice given to the tenant or tenants to leave the same, acccording to the provisions of the Act of Assembly in such case made and provided," &c. &c. I am inclined to think a fair construction of this Act requires that, before a landlord can have this writ, he must have given a notice to his tenant to leave the premises, if, by the law, the tenant is entitled to such notice.

But it has been contended by the counsel for the plaintiff, that in this case there was a lease for but one year, and therefore, as the defendant was bound to leave at termination of the lease, he is not within the Act of Assembly where the tenant could demand a notice to leave the premises. In the case of Bedford v. M'Elberson, 1 S. & R. 50, it was held, when a lease is to expire at a certain time, there can be no occasion to give notice to quit. In the case of Logan v. Herron, 8 S. & R. 460, it was said by Chief Justice Tilghman, "Where the lease is to determine at a *certain time*, there can be no occasion for notice, because the time of termination is as well known to the tenant as the landlord." That decision was made in a proceeding under the Landlord and Tenant Act, and on a construction of the Act of the 21st of March, 1772.

In the case of Lesley v. Randolph, 4 Rawle, 126, Judge Kennedy, in delivering the opinion of the Court, remarks: "*It* seems to be established in England as well as here, that when a lease or demise is determinable on a certain event, or at a particular period, no notice to quit is necessary, because both parties are equally apprised of the determination of the term, and it is not material whether it be only for a single year or any longer period."

It appears from the evidence, that the defendant had occupied the farm during the year 1846; in the spring of 1847 he told the plaintiff that he would give him but $400 for the farm for the year 1847, and it would seem to this the plaintiff assented. It was conceded on the argument there was a new bargain made last spring, and that the defendant rented the farm *for but one year*. If such is the fact, then, according to the construction put upon the Act of 1772, no notice to quit would be required, and the provisions of the Act of 1822 authorize the writ of estrepement to issue, when a notice is given under the Landlord and Tenant Act; and the view taken of

that Act is this, that when the lease is to determine at a particular time, this is a notice at the time of making the contract, and, therefore, the necessity of any subsequent notice is superseded by the contract itself. Such being the law, in my opinion there was no other or previous notice required to be given by the plaintiff to the defendant before he issued this writ. If this view is correct, then all that is demanded by the Act of Assembly seems to have been complied with, and this position, assumed by the defendant's counsel, cannot be sustained.

The last, and by far the most difficult point which arises in the cause, is whether, under the evidence before us, the acts complained of are *waste;* or, whether the ground which the defendant was ploughing up, was farming contrary to the custom of the country ; or rather, whether those acts, if fully proved, would be bad husbandry and a material injury to the premises. The reason why this point has been rendered difficult of determination, arises from the fact that there is much conflicting testimony. Hence, when the Court determine law and fact, and are compelled to weigh the evidence, it is always attended with considerable trouble. Frequently there is great perplexity in fixing a correct standard of judgment on the facts, and therefore I have held this case longer under consideration than I should have done, if its ultimate decision had only turned upon the application of legal principles. But from a careful examination of the evidence, and upon mature reflection, I am of the opinion that the acts complained of by the plaintiff against the defendant, and which he was committing when this writ issued, are *waste;* that they are of such a nature as would prove an injury to the plaintiff's farm ; that it is a course of farming contrary to the general custom of the country, and a violation of the rules of good husbandry, and consequently a violation of the implied contract in the lease ; and that those acts are of such a character, that a Court of Chancery in England would feel required to arrest by an injunction.

It has been contended, that what might be considered bad husbandry in England, would not be so here. But I am not willing to admit the soundness of this proposition, in its general application to all parts of this Commonwealth.

It is difficult to see why the great principles of the common law, which have obtained the sanction of men of wisdom, and been found beneficial in a densely populated agricultural country, in the old world, should not be applied in this country, where agriculture has attained an almost similar state. Why is it, in the agricultural

parts of the county of Philadelphia, where almost every acre of land is cultivated, and made to yield all that can be produced of a vegetable kind, which will grow in this meridian; where large portions of many farms are gardens; the wholesome laws relative to *waste* committed on such farming land should not be applied? Shall long-fixed meadow land, that is producing to the owner double in value more than the most fertile land on our rivers do in wheat, be ploughed up, the large firm roots of meadow grass destroyed by a tenant who has a lease for a year, barely because he is in possession? A doctrine like this requires calm reflection, before, as a judge, I am prepared to sanction it. It seems to me the strict but wholesome rules of the common law, as applied by Courts of Equity, are peculiarly applicable to a state where agriculture has attained so flourishing a condition as it has in Pennsylvania.

When we reflect that the whole vegetable kingdom is now searched for manures to enrich the soil, aided by science, and particularly that of chemistry, so that the cultivation of but a few acres will satisfy the eager desires of most men, and richly repays the cultivator for all his labour, we should not settle a principle which would enable an avaricious tenant to take off from the soil *that* which greatly impoverishes the land, and return it to the landlord in nearly a barren state, if not reft of its fertility—in a condition greatly impaired for future use. To no such claim of a tenant should a Court lend a ready ear, where such must inevitably be the result.

I am not prepared to say that any definite rule should be laid down, for the task is difficult; and in the absence of the other members of the Court shall not do it. Every case must, for the present, depend upon the peculiar facts which surround it. Enough has been disclosed by the evidence to satisfy my mind, that the present is a proper case for the operation of the writ of estrepement, upon the strength of the authorities which have been referred to. And simply decide, that, under the evidence adduced in this cause, the writ should not be dissolved.