# Cooke v. Neilson.

[JANUARY, 1849.]

A tenant from quarter to quarter, who has held over, is not bound to give notice of his intention to quit at the end of the current quarter.

ERROR to the District Court of Philadelphia.

Case stated. Action for use and occupation. On the 31st of August, 1842, R. P. Neilson, the defendant, rented of D. Cooke, the plaintiff, the house then occupied by him, "*by the quarter, commencing on the 10th of September*, 1842, *at* $200 *per quarter.*" On the 24th of September, 1844, the plaintiff notified the defendant, that after the 10th of December following, his rent would be $250 per quarter: on the 6th of June, 1845, the defendant quitted possession of the premises and paid the rent falling due on the 10th June. This action was brought to recover the succeeding quarter's rent, viz.: from June 10th to September 10th, 1845.

The district court, (SHARSWOOD, President, dissenting,) gave judgment for the defendant. The plaintiff thereupon sued out a writ of error from the supreme court, and the arguments of counsel will be found, with the report of the case, in 10 Barr, 41. The supreme court being equally divided, the judgment of the district court was affirmed.

The question, therefore, cannot be considered as definitely settled in this state; the supreme court being divided, and the learned president of the district court having dissented from the opinion of the majority of the judges. The dissenting opinion of the president of the court below which contains much valuable learning, is as follows.

SHARSWOOD, President.—The question presented upon this case stated is, whether a tenant from year to year in the absence of a special agreement, can remove at the ex-

piration of any of the current years of his tenancy, without previous notice of his intention to his landlord; and whether by his failure to give such notice, he does not become responsible for the rent of the succeeding year; in other words does not continue in the eye of the law to be the tenant?

The case before us is of a tenancy from quarter to quarter. "I have rented of David Cooke the house I now occupy by the quarter." These are the words of the contract. This phrase, *by the quarter*, expresses, not a term certain, as one quarter, but the measure of the tenancy: and the tenant is a tenant for so many quarters as he continues to occupy, including the current quarter.

It is clearly established that in a tenancy from year to year, (and the same rule is of course applicable to the tenancy in this case, *mutatis mutandis*,) the landlord, in order to determine the tenancy, must give notice of his intention ending with the current year, or otherwise the tenant cannot be ejected, but becomes entitled to hold for another year.

The general custom of the tenants of farms in the country, to quit at a particular season of the year, has laid a strong foundation, in convenience, for this rule: and no difference between urban and rural property in this respect has ever been recognised.

Upon any other principle, the tenant of a farm ejected by the landlord, without notice, on or after the 1st of April, by an ejectment or the summary process provided by our act of assembly, would be destitute of a home and the means of livelihood, until the ensuing 1st of April.

On the other hand the landlord, whose farm is deserted by the tenant on the 1st of April without notice, is left without a tenant, and his property is unoccupied and unproductive until the regular time of letting again comes round.

There is, in either case, a public as well as a private loss, against which it is the policy of the law to provide.

[ Cooke *v.* Neilson. ]

There is not perhaps to be found in the books, any case in which this precise point has been raised and determined against the tenant, even in England. Yet there the law appears to be considered as perfectly well settled. It is asserted in the English elementary treatises of the best authority as unquestionable; 2 Bl. Com. 145; Comyn on Landl. 265, 474; Woodfall, 145. It is assumed and taken for granted in most of the cases in which the question arose and was decided, as against the landlord; *Doe dem. Dagget* v. *Snowden,* 2 W. Bl. 1224; *Gulliver dem. Tasker* v. *Burr,* 1 W. Bl. 526; *Right* v. *Darby,* 1 T. R. 162; *Sparrow* v. *Hawkes,* 2 Esp. 504; *Kingsbury* v. *Collins,* 4 Bingh. 202; *Izon* v. *Gorton,* 5 Bingh. N. C. 501. In *Savage* v. *Dupins,* 3 Taunt. 410, the defendant agreed by parol to rent a house as tenant from year to year for the residue of a term, which was three years and three quarters. He held for three years and one quarter, and then removed. It was ruled, that though perhaps he might have quitted without notice at the end of three years, yet remaining longer, implied a contract to pay rent for the residue of the term. The reason, as sufficiently appears in the report of the case, why he might have left at the end of three years without notice, was that the original lease, out of which the tenancy from year to year was derived, not having another integral year to run, ceased to furnish materials for the longer duration of the tenancy from year to year. We may well therefore apply to this case the maxim, *exceptio probat regulam.* In *Wilson* v. *Abbott,* 3 B. & C. 88, the question which arose was, whether the taking was for one year certain or from year to year, and the only reason why that point was at all material in the case, was that the tenant had failed to give notice. A. let apartments in his dwelling house to B. at a rent payable half-yearly. B. took possession at Michaelmas, 1822, and at Lady-day, 1823, paid half a year's rent. In June of that year, B. left the apartments without giving any notice to quit, but at

Michaelmas; 1823, which was the expiration of the first year of his tenancy, he paid half a year's rent. At Lady-day, 1824, the landlord demanded another half year's rent, which the tenant refused to pay, and the court of king's bench held that the tenant was not liable, distinctly upon the ground that in the case of lodgings, which are not usually let for so long a period even as a year, they could not infer from the facts a contract from year to year. It is plain, therefore, that unless it had been considered a conceded point, that if B. was a tenant from year to year, he was bound to give notice, no question at all would have arisen in the case.

This doctrine is most consonant with the other incidents which have been attributed to tenancies from year to year, and with the history and character of this kind of interest. It arose from the old tenancy at will. The inconveniences resulting from a sudden determination of the will by either lessor or lessee, induced the courts to convert all lettings for an indefinite duration, when an annual rent or other return at a certain period was agreed on, into tenancies from year to year, and to require a reasonable notice by either party to the other before the estate could be determined. It was perhaps judicial legislation; and though its date be, as is supposed, 13 Hen. VIII., it is now as much and as inseparably a part of the common law as any doctrine, let it have sprung ever so near its yet undiscovered fountain head. Thus, some degree of certainty in the possession— not only the matter of repose, but the sure incentive to the industry and enterprise of the possessor, and the consequent increase of the public wealth and strength—was imparted to an interest which was before vague and uncertain. Accordingly it has always been held that in pleading this estate, it may be averred to be a term for so many years as the lessee has occupied, including the current year, and it was assured to continue to the end of that year, and still longer unless either party before the expiration of the cur-

[ Cooke *v.* Neilson.]

rent year, gave notice of his intention to determine the estate; 4 Bacon's Abr. 180 n.; *Legg* v. *Strudwick*, 2 Salk. 414; *Birch* v. *Wright*, 1 T. R. 380; *Webber* v. *Shearman*, 6 Hill, 20; 8 S. & R. 468. Still, however, it is in legal phrase a tenancy from year to year, *quamdiu ambabus partibus placuerit;* and, as it was held at a very early period, it partakes of the nature of the old tenancy at will in this very important particular, that it is of the essence of the estate that it shall be at the will of both the lessor and the lessee; so that if parties should expressly contract for an estate to be held at the will of one of them only, the law will not recognise such an interest, but at once annexes to the estate created by the contract, that mutuality, which, like the power of alienation in an estate in fee, is its inseparable incident; Keilw. 65, pl. 6; ib. 162, pl. 4; 13 Hen. VIII. 16, pl. 1. This principle of mutuality ran through the whole law of tenancies at will in a very remarkable manner. Thus, if the lessor determined his will in the middle of a quarter, he lost the whole rent of that quarter. If the lessee in like manner determined the estate in the middle of the quarter, he was liable for the rent of the whole quarter; *Layton* v. *Feild*, 3 Salk. 222, pl. 1; S. C., 1 Ld. Raym. 707. If the lessor determined the will, the lessee was entitled to the emblements, with free entry, egress and regress, to cut and carry them away: *aliter*, if it was determined by the act of the lessee; Litt. § 68; Co. Litt. 55 b.; *Stomfil* v. *Hicks*, Holt, 414. The landlord could only determine the estate by some notorious act upon the ground, or by notice to the tenant. In like manner it was expressly held, that the tenant could not determine his will secretly without notice given to the lessor; 2 Bl. Com. 145; Co. Litt. 55 b.; 1 Roll. Abr. 861; *Highly* v. *Bulkly*, 1 Sid. 339; T. Jones, 5. It is unnecessary to pursue these analogies further.

The case of *Hemphill* v. *Flynn*, 2 Barr, 144, does not in the least touch this principle of mutuality. That was not

[Cooke v. Neilson.]

a case of tenancy from year to year, but for a year certain. The tenant held over, and claimed upon payment of the rent of the first quarter of the second year, that he had a right to give up the possession, and be released. It was decided that the landlord might either elect to treat him as a wrong-doer or as a tenant for another year, upon the terms of the original letting, while the tenant had not the same right of election; in other words, could not elect to consider himself as a trespasser—could not take advantage of his own wrong.

It is supposed, however, that there is a custom contrary to this in Pennsylvania, of which the court can and is bound to take notice, as part of the common law of the state. The impression of the bar, when it has become the ground of a well settled course of counsel and practice, is no doubt entitled to the most profound respect. It is rarely, if ever wrong. But it should be of the most clear and unequivocal character, to establish a general custom, differing from the common law. Can the impression referred to be considered of this character, when we find Judge DUNCAN, than whom no man had a larger practice at the bar nor longer experience in the interior counties, saying, of the provision in regard to notice:—"It prevents a surly landlord from dispossessing his tenant at an unreasonable time of the year, and a perverse and crooked tenant from quitting when the landlord cannot procure another tenant;" (*Logan v. Herron*, 8 S. & R. 472;) and Judge KENNEDY, who was as distinguished for his accuracy as for his extensive learning, and who would not have failed to qualify his language if he had entertained a doubt, expressing himself as follows:—"My idea of a lease from year to year is this, that it is binding prospectively on the parties for one year only, capable however of being extended to a second, third, fourth or fifth year, and so on, unless determined by the dissent of either party, which may be done at the close of any one year by giving three months' previous notice to that effect." *Lesley v. Randolph*, 4 Rawle, 127.

[ Cooke *v.* Neilson.]

On the whole, I am of opinion that judgment on this case stated, should be entered for the plaintiff, but as the majority of the court entertain a different opinion, judgment must be entered for the defendant.