## Phœnixville Borough *v.* Walters, Appellant.

[Marked to be reported.]

147   501
|s184 617

*Landlord and tenant—Holding over.*

Where a tenant for a term of years holds over at the expiration of his term, he becomes a tenant from year to year, and is entitled to hold till the end of a current year and cannot be required to quit at an intermediate day.

*Evidence of renewal of lease—Question for jury.*

A borough council at the request of its tenants, a company of cadets, passed a resolution renewing a lease. The captain of the company was present when the resolution was passed. The company remained in possession and paid rent, but there was no formal acceptance of the renewal. *Held,* that the question of the assent of the tenants to the terms of the resolution adopted by councils was one of fact for the jury.

Argued Feb. 8, 1892. Appeal, No. 23, July T., 1891, by defendants, Lewis R. Walters, et al., from judgment of C. P. Chester Co., Oct. T., 1888, No. 68, on verdict for plaintiff. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOL-LUM, MITCHELL and HEYDRICK, JJ.

Appeal from judgment of justice of the peace in proceedings to obtain possession under the landlord and tenant act of December 14, 1863.

At the trial before HEMPHILL, J., the facts appeared as stated in the opinion of the Supreme Court.

The court charged in part as follows:

" On May 5, 1875, the plaintiffs leased to the defendants the premises in controversy for a period of ten years, and they entered upon and occupied the same under that lease until its termination, May 5, 1885, and afterwards continued in the occupancy of said premises until dispossessed by the constable on October 19, 1888. Upon the termination of the ten years' lease, the defendants desired to relet for a period of five or ten years longer, and on June 2, 1885, Capt. Walters visited the borough council, and while he was present a resolution was passed to renew the leases of defendants, the Griffen Battery and the Band, the only record of which is to be found in the minutes of councils and which is there entered in the following language: ' On motion of Mr. Snyder it was agreed to renew

the leases on the council chamber lot for a period of five years, with a proviso that the borough shall have possession of the same at any time by giving the parties one year's notice.' At the next meeting of council, in July, the minutes of the meeting on June 2 were read and approved.

"Immediately after the passage of the resolution offered by Mr. Snyder, Capt. Walters retired from the council chamber without assenting to or dissenting from the action of the council. No written lease was executed or even prepared. No action was taken by the defendants looking to the ratification or rejection of the lease proposed by the resolution of council. They were in possession of the premises at the time of the passage of the resolution and so continued after its passage. They had paid their rent heretofore for the year running from May 5, to May 5, following, and so they continued to pay it. There was nothing to indicate that they had accepted the terms of lease proposed by council, unless the presence of one of the defendants in the council chamber at the time of the passage of the resolution can be regarded as an acceptance and a ratification of its terms.

"In the opinion of the court it cannot be so regarded or treated; the terms must not only be offered by the one side, but be accepted by the other, either by words or acts, to constitute a valid and binding contract.

"There is no evidence in this cause that would justify us in saying that there was an acceptance of the terms proposed by councils on June 2, 1885, and consequently there was no renewal of the old lease nor was a new one made.

"The view, however, that the court takes of the law of this case renders it unimportant whether there was a new lease or a holding over as tenants from year to year after the termination of the old one.

"In the opinion of the court, the holding after the termination of the ten years' lease was at will until an annual rental was paid, after which it became a lease from year to year. The lease, therefore, being from year to year, it was necessary in order to terminate it (and dispossess the defendants, under the act of December 14, 1863) that notice should be given of such intention by the plaintiffs 'three months before the expiration of the term.' The annual lease or term was from May 5

to May 5. Was then the notice given by councils on August 1, 1887, and which reads as follows:

"'To the Wheatly Cadets: Please to take notice that we, desire to have again and repossess the lot of land situate on Gay street, in the borough of Phœnixville, and county of Chester, leased to you by us, and which said premises you now hold as tenant under us; and therefore we do demand and require you to remove from and leave the same on the first day of August, A. D. 1888. Given under our hand the 29th day of July, A. D. 1887. The Burgess and Town Council of the borough of Phœnixville, Pa., per J. P. Eaches, Clerk of Town Council of said borough.' (Endorsed: 'I hereby certify that I served a notice, of which this is a copy, on L. R. Walters, Captain of the Wheatly Cadets, July 29th, 1887. E. M. Brownback, Constable,') such notice as is required by the act of 1863? If it was such notice as is required by the act of 1863, your verdict will be for the plaintiff; if it was not, then your verdict will be for the defendants.

" It will be seen that the act does not require that the notice shall be given three months immediately preceding the termination of the term, or that it shall be given to quit at the expiration of the term, or to designate the day upon which the term expires, but that the lessor shall give three months' notice of his determination to repossess the premises upon the termination of the then current term.

" That three months' notice prior to the termination of the then current term was given in this case, cannot be doubted, for the term ended May 5, 1888, and notice was given July 29, 1887. But the notice was to quit August 1, 1888, or after the termination of the current year, May 5, 1888, and it is therefore urged that by permitting the defendants to remain upon the premises after the termination of the then current term, that it permitted them to hold for another year from May 5, 1888. That, instead of being notice of a desire to repossess the premises, it was in effect notice that defendants could retain possession for another year.

" Such a construction we cannot put upon the notice. It was given more than three months prior to the termination of the then current term, and it gave notice that the plaintiff desired to repossess the premises on August 1, 1888. Defendants

were not compelled to remain until August 1; they could have quit at the end of the term, but because plaintiff, having given all the time and more than is required by the act, further gives them permission to remain after the termination of the term and until August 1, cannot, in our opinion, be construed into permitting them to remain or to be a leasing for another year. The object of the act is to give to those tenants, the terms of whose leases are indefinite or uncertain, at least three months' notice of the landlord's determination to repossess the leased premises, in order that they shall have ample time to look about for another property to remove to, and not be taken unawares and ousted without ceremony or notice.

["It therefore becomes my duty to say to you that the notice given in this case on August 1, 1887, was such notice as is required by the act of December 14, 1863, and that, the defendants having failed to remove from the premises on or before August 1, 1888, your verdict must be for the plaintiffs.] [7]

"It only remains under these circumstances in this case to instruct you to render a verdict for the plaintiffs." [6]

The plaintiff presented this point which was affirmed:

10. "If the jury believe the evidence produced by the plaintiffs in this case, their verdict should be for the plaintiffs." [1]

The defendants presented the following points:

"1. To establish a renewal of the old lease, the jury must find that the proposition of the town council, as set forth in their resolution of June 2, 1885, was submitted to the defendants, and that the terms and conditions of said proposition were understood and accepted by them, and that they remained in possession of the premises in pursuance of that agreement. The resolution itself, without more, is not evidence of such an agreement, and is not binding upon the defendants, and they were entitled to three months' notice to leave prior to the end of the current year, viz.: May 5, 1888, or to hold possession until May 5, 1889. A. That point is affirmed, excepting that they were not entitled to hold possession until May 5, 1889, having already received notice three months prior to the termination of the then current term, that the landlord wished to repossess the premises." [2]

"3. The notice to quit in this case was not a legal notice as required by the act of December 14, 1863, and was not suf-

ficient to base an action for the recovery of possession under said act, nor under the complaint in this case. A. That I have passed upon in the general charge, and it is disaffirmed." [3]

" 4. Under the statute of frauds, the attempted renewal of the lease on or about June 2, 1885, was void, and the military company became tenants from year to year, and no notice having been served upon them requiring them to quit on May 5, 1888, they were entitled to hold possession for another year from that date. A. The question as to the statute of frauds is not involved here, is not applicable to this case. The point as stated here is therefore disaffirmed." [4]

" 6. If the jury find for the defendants, they will assess such damages against the borough as under the evidence the defendants have sustained by reason of their removal from the premises. A. That point would be well taken if your verdict was for the defendant. But as I shall and have instructed you, it must be for the plaintiffs, and that point is disaffirmed." [5]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1–7) instructions, quoting points and answers and portions of the charge as above.

*H. H. Gilkyson, V. G. Robinson* with him, for appellants.— There is a fatal variance between the cause of action and the complaint. The foundation for the plaintiff's right of action was a leasing for ten years, terminating on May 5, 1885. Yet subsequent to this date the yearly rent reserved under the original lease was paid and accepted by the borough. There is a fatal variance between the cause of action and the notice served upon the defendants. The complaint was for a term " ending on May 5, 1885 ; " the notice, " and therefore we do demand and require you to remove from and leave the same on the 1st day of August, A. D. 1888." The court was in error in holding that the notice was sufficient because :

*a.* The notice was given pursuant to the supposed leasing by resolution of June 2, 1885, and was an attempt to carry out the conditions of a void lease : Waters v. Young, 11 R. I. 1 ; 23 Amer. Rep. 409 ; Pitcher v. Bonovan, 1 Staunton, 555 ; Kemp v. Derrett, 3 Camp. 510.

*b.* A new term was created by the notice to run from May 5, and to end on August 1, and this term must have been set forth in the complaint.

*c.* The extension of the term from May 5, 1888, to August 1, 1888, with no reservation of rent, gives no jurisdiction under the act of December 14, 1863, as supplemented by the act of March 6, 1872, P. D. 1019, pl. 23: Graver v. Fehr, 89 Pa. 460.

*d.* A notice to quit, under the act of December 14, 1863, if it fixes a time, it must be to quit upon the determination of the lease and not upon some other date.

*e.* If the alleged notice to quit created a new term ending on August 1, 1888, a new term being created by such notice, the notice to quit can have no greater effect than an agreement upon the part of a tenant under an ordinary lease, to surrender at the expiration of his term: Gault v. Neal, 6 Phila. 61.

A tenancy from year to year can only be terminated by three months' notice to quit at the expiration of the year: McDowell v. Simpson, 3 Watts, 137; Bedford v. McElherron, 2 S. & R. 49; Taylor's L. & T., sec. 477; Waters v. Young, 11 R. I. 1; 23 Amer. Rep. 410; Steffens v. Earl, 11 Vroom, 128; 29 Amer. Rep. 214; Pitcher v. Donovan, 1 Staunton, 555; Kemp v. Derrett, 3 Campbell, 510.

*A. N. Holding, R. E. Monaghan* with him, for appellee.

In order to dispossess a tenant under the act of 1863, it is required by that act that the lessor must show that three months previous to the end of the term notice had been given to the lessee of his desire to repossess the demised premises: Snyder v. Carfrey, 54 Pa. 90; Kraft v. Wolf, 6 Phila. 310; Buchanan v. Baxter, 67 Pa. 350; Glenn v. Thompson, 75 Pa. 391; DeCoursey v. Guarantee Trust Co., 81 Pa. 226; Rich v. Keyser, 54 Pa. 89; Henwood v. Chuseman, 3 S. & R. 500.

The appellants accepted the terms of the new lease by implication at least, and by their conduct their assent is to be presumed: Vetter's Ap., 99 Pa. 52.

The statute of frauds applies only to leases that must of necessity last for more than three years, and does not apply to leases, which, by their terms, may last for less than three years: Ex parte Voisey, in re Knight, 21 Ch. Div. 457, 458; Fenton v. Emblers, 3 Burrows, 1281; Moore v. Fox, 10 Johns. 244; McPherson v. Cox, 6 Otto, 416; Walker v. Johnson, Id. 427; Lockwood v. Barnes, 3 Hill, 130; Peters v. Westborough, 19

Pickering, 367; Roberts v. Rockbottom Co., 7 Metcalf, 48; Houghton v. Houghton, 14 Indiana, 505; Linscott v. McIntire, 15 Maine, 201.

Where a lessee enters and takes possession under a parol demise for a term greater than the statutory period a tenancy arises, governed by the terms of the demise in all respects, save only as to duration: Schuyler v. Leggett, 2 Cowen, 660; People v. Rickart, 8 Ib. 226; Craske v. Christian Union Co., 17 Hun, 319; Dorrill v. Stephens, 4 McCord, 59; Hollis v. Pool, 3 Metcalf, 350; Creech v. Crocket, 5 Cush. 133.

There is no merit in the appellant's averment of a fatal variance between the complaint and the proof: Koenig v. Bauer, 57 Pa. 169: Koontz v. Hammond, 62 Pa. 177.

OPINION BY MR. JUSTICE WILLIAMS, March 7, 1892.

This case depends on the character of the defendant's tenancy. It is conceded that they went into possession of the lot in question under a lease for ten years from the 5th day of May, 1875, and erected an armory thereon. As their term approached its close the defendants entered into negotiations with the borough authorities for the purpose of securing an extension or renewal of the lease. These culminated in the adoption by the borough council of a resolution extending the lease for a further period of five years, with a proviso that the defendants should quit and surrender up possession at any time on one year's notice so to do. When the resolution was offered Captain Walters, the commanding officer of the Wheatly Cadets, was present and remained in the room until its final passage. The company remained in possession, and, as we understand, continued to pay the rent after as before the expiration of the original lease.

Now, it is evident that, when the proceedings were begun in 1888, the defendants were in possession as tenants from year to year, because of their holding over after the expiration of their term on the 5th day of May, 1885; or they were tenants in possession under the renewal of the former lease by virtue of the resolution adopted in June, 1885. If the former is true they were entitled to hold till the end of a current year, and they could not be required to quit at an intermediate day: Fahnestock v. Faustenauer, 5 S. & R. 174; Lesley et al. v. Randolph, 4 R. 123.

If the latter is true, they were bound to quit at any time on one year's notice, according to the express terms of the renewal resolution. They were notified on the 29th day of July, 1887, to quit on the first day of August, 1888. This was a year's notice, given on the theory that the defendants were in under a renewal of the lease, and, if such was the fact, the notice was sufficient and the defendants were bound to quit on the day named.

If, on the other hand, they were holding over from year to year, they were not bound to quit on the first day of August, no matter how long the notice had been given them, for it was not the end of a current year: Lesley v. Randolph, supra. If holding from year to year, the defendants were entitled to a notice to quit at the end of the year, served at least three months before that time.

The trial judge seems to have held as matter of law that the defendants' lease was not extended, and that they were holding over as tenants from year to year. Having reached this conclusion, he held the notice to quit to be good, notwithstanding the fact that it called on the defendants to surrender at an intermediate day, and not at the end of the current year. In this we think the learned judge was mistaken. We do not see, as the case is here presented to us, why the character of the tenancy was not a question of fact for the jury. In the light of all the surrounding circumstances, the question of the assent of the defendants to the terms of the resolution adopted by councils would seem to be one of fact. If such assent had been found by the jury, then the notice was sufficient, and the defendants were bound to surrender on the day named therein.

If such assent had not been found, then, under the authorities already cited, the notice was insufficient, because it did not take notice of the end of the current year and require the surrender to be made on the 5th day of May.

For this reason the judgment is reversed, and a venire facias de novo is awarded.